**Olga G. NEGRON GAZTAMBIDE,**
**Plaintiff, Appellee,**

v.

**Zaida HERNANDEZ TORRES, et al., Defendants, Appellees.**

**Hon. Charlie Rodriguez, etc., et al., Appellants.**

**No. 97–1858.**

United States Court of Appeals, First Circuit.

Heard Feb. 25, 1998.

Decided May 28, 1998.

, Pablo Landrau Pirazzi, with whom Aldarondo & Lopez Bras, Claudio Aliff Ortiz, were on brief for appellant Rodriguez and Manuel J. Perez Garcia, was on brief, for appellant Misla and Figueroa.

Carlos Del Valle Cruz with whom Ricardo L. Torres Munoz was on brief, for appellees.

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and STAHL, Circuit Judge.

PER CURIAM.

Defendants-appellants Edison Misla Aldarondo ("Misla"), President of the House of Representatives of Puerto Rico; Jose Figueroa ("Figueroa"), Director of the Legisla-

tive Service Office; and Charlie Rodriguez ("Rodriguez"), President of the Senate, each of whom has been sued solely in his capacity as an officeholder of the Commonwealth of Puerto Rico, appeal from an order of the district court enforcing a $300,000 settlement agreement between plaintiff-appellee Olga G. Negron Gaztambide ("Negron") and the Commonwealth.[1] Because we find that the attorneys who entered into the putative settlement agreement did not have the actual authority to do so on behalf of the Commonwealth, we vacate and remand.

## I.

### Background

In late January or early February 1993, Negron was discharged from her position as a librarian in the Legislative Library, which is managed by the Legislative Service Office of the Commonwealth of Puerto Rico. She was informed of her discharge in a letter signed by Nelida Jimenez Velazquez ("Jimenez"), then the Director of the Legislative Service Office. At the time, Zaida Hernandez Torres ("Hernandez") was the Speaker of the House of Representatives, and Roberto Rexach Benitez ("Rexach") was the President of the Senate.

On June 22, 1993, Negron brought this section 1983 action alleging, *inter alia*, that Jimenez, Hernandez, and Rexach had terminated her employment because of her political affiliation with Puerto Rico's Popular Democratic Party in violation of the First Amendment. Negron sued the three defendants in both their *personal* and *official* capacities, seeking monetary damages and reinstatement. The district court dismissed Negron's claims on the ground that the defendants were entitled to legislative immunity. We reversed, holding that the challenged actions were administrative and thus not subject to an absolute immunity defense. *See Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25 (1st Cir.1994).[2]

After remand, the case was eventually scheduled for trial on November 25, 1996. Pursuant to a defense and indemnification statute commonly referred to as "Law 9," *see* P.R. Laws Ann. tit.32, §§ 3085,[3] the Commonwealth's Department of Justice ("DOJ") provided the defendants with legal representation. Attorney Antonio Montalvo ("Montalvo") represented defendants Hernandez and Jimenez, and counsel Miguel Pagan ("Pagan") represented Rexach.[4] On the day the trial was to commence, the attorneys held settlement negotiations in the chambers of the district court. In order to obtain Law 9 funds to indemnify the defendants for the costs of the settlement, the attorneys made several calls to the DOJ during the course of the negotiations. DOJ procedures require that settlements be submitted to a Settlement Committee, which then makes a recom-

1. The plaintiff did not name the Commonwealth as a defendant in its complaint, but rather sued the officeholders who preceded Rodriguez, Misla and Figueroa in office in their respective official capacities. *See infra* at 413. Because a suit against a public official in his or her official capacity is, in so far as it is relevant here, a suit against the underlying public entity, *see infra* at 415–416, we use the terms "Commonwealth" and "official capacity defendants" interchangeably.

2. Negron also claimed that she had been dismissed in violation of the Due Process Clause and the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213. We affirmed the district court's Fed.R.Civ.P. 12(b)(6) dismissal of these claims in Negron's first appeal. *See Negron–Gaztambide,* 35 F.3d at 27.

3. The statute provides that:

   Every official, ex-official, employee or ex-employee of the Commonwealth of Puerto Rico who is sued for damages in his personal capacity, when the cause of action is based on alleged violations of the plaintiff's civil rights, due to acts or omissions committed in good faith, in the course of his employment and within the scope of his functions, may request the Commonwealth of Puerto Rico to provide him with legal representation, and to subsequently assume the payment of any judgment that may be entered against his person.

   ·    ·    ·    ·    ·

   Likewise, these provisions shall not be construed, for any reason whatsoever, as making the Commonwealth an insurer of the aforesaid public servants, nor as a waiver of the sovereign immunity of the Commonwealth.

4. From the record, it appears that another attorney, Mr. San Miguel, also made an appearance on behalf of defendant Rexach. It is not possible, however, to ascertain from the record before us what role this attorney played.

mendation regarding approval to the Commonwealth's Attorney General ("AG"), prior to the allocation of Law 9 funds. By the conclusion of the negotiations, approval from the AG had not yet been obtained. Nonetheless, the parties informed the district court that an agreement had been reached and that they were in the process of obtaining the required approval.[5]

With the settlement conference concluded, the district court questioned counsel on the record regarding the terms of the oral agreement the parties had reached. Attorney Pagan began by stating that "the agreement that the attorneys have reached is pending approval by the Commonwealth of Puerto Rico Department of Justice." Pagan then described the settlement, stating that the defendants (without specifying whether in their official or personal capacities) had agreed to provide monetary damages in the amount of $300,000, that the district court record in this case would be sealed, and that Negron would be reinstated to her job with certain retirement benefits after the AG accepted the settlement. As for the source of the funds, Pagan made the following opaque statement:

> The Senate of Puerto Rico and its President, Roberto Rexach Benitez will pay by stipulation the amount of $150,000. The House of Representatives and defendant Zaida Hernandez Torres, now the Superior Judge of Puerto Rico, Honorable Nelida Jimenez will pay also the amount of $150,-000.

The district court specifically asked both defense attorneys, Pagan and Montalvo, whether they had authorization from their clients to propose the settlement, and both replied affirmatively. The district court then stated, "[B]oth counsel are working under my orders to get the settlement committee to approve this as soon as possible, at least to consider it as soon as possible with your recommendations."

In January 1997, new leadership took power in the Puerto Rico legislature. Rodriguez was sworn in as the new President of the Senate; Misla, as Speaker of the House of Representatives; and Figueroa, as Director of the Legislative Service Office. Pursuant to Fed.R.Civ.P. 25(d)(1), Rodriguez, Misla and Figueroa were automatically substituted as defendants in their official capacities to the official capacity claims Negron had brought against Hernandez, Jimenez and Rexach. At that point, therefore, there were two sets of defendants: the official capacity defendants (Rodriguez, Figueroa, and Misla) and the personal capacity defendants (Hernandez, Jimenez and Rexach).[6]

The change in legislative leadership may have prompted a change in heart about the settlement. On March 13, 1997, the district court required representatives from the DOJ to attend a status conference on the settlement agreement. An attorney representing the AG explained that monies to satisfy the settlement would come from Law 9 funds, but took the position that the defendants had not followed the proper procedure to obtain the statutory funds. The attorney explained that a petition for the funds had to go to the Settlement Committee at the DOJ first, and then to the AG for his approval. The district court then granted the AG until March 26, 1997, to decide if the settlement would go forward as planned; otherwise, a jury trial would commence on May 12, 1997.

On March 25, 1997, the AG filed an informational submission stating that Hernandez, still a defendant in her personal capacity, had contacted the AG and claimed that she had not been aware of the details of the settlement and would not approve it until all the details were made known to her. The AG informed the court that, as a result, he would not make a decision concerning payment of

---

**5.** Notably, no transcript or record exists that documents these discussions.

**6.** Defendants Hernandez and Jimenez *have not* joined in this appeal in their personal capacities. Defendant Rexach, the third personal capacity defendant, did not file a notice of appeal or otherwise seek leave to appeal, but has filed a brief seeking to enforce the settlement. We have treated this brief as a nullity. Given the failure of these defendants to appeal the district court's order, we confine our opinion to the potential liability of the Commonwealth. Any questions regarding the potential liability and/or status of the personal capacity defendants are not properly before us.

the settlement from Law 9 funds until all parties were in agreement, and until a proper settlement request had been prepared and submitted to the DOJ.

On March 31, 1997, plaintiff filed a motion requesting the district court to enter judgment in accordance with the stipulation entered by Attorneys Montalvo and Negron. The motion requested (1) entry of judgment consistent with the November 25, 1996, settlement agreement; (2) additional back pay; (3) a default judgment against Hernandez plus sanctions; (4) $25,000 in attorney's fees; (5) a contempt order against appellants in their official capacities; and (6) any other remedies that the court deemed proper. The official capacity defendants opposed this motion, arguing that the settlement was contingent upon AG approval.

On June 16, 1997, the district court granted the plaintiff's motion in part. The district court found that, as far as the court was concerned, "a valid and enforceable settlement agreement was reached on November 25[, 1996] and that there is no issue as to the parties' consent." The court described how it understood the oral agreement that had been reached between the parties:

> It is the Court's recollection that the only snag in the settlement negotiations was whether the sum agreed upon as damages would be paid out of the General Fund pursuant to Law 9 (for which the DOJ approval process was necessary) or by the Legislature. During the settlement discussions that took place on November 25, the Court stated to the parties that the source of the funds was not the Court's concern. Based on ... representations made during these discussions, which included telephone calls made from the [district court's chambers] to the DOJ, the Court assumed that the settlement would be paid from the General Fund.... The Court's understanding ... was not that the settlement was contingent on approval by the DOJ in the sense that the agreement would be off were the DOJ not to grant approval. Rather, the court's understanding was that if the DOJ did not accept the settlement, the Legislature would assume the payment.

The district court thus directed the Commonwealth's Attorney General to "make a determination with respect to the settlement," and then ordered that if the AG declined to pay, the legislature would fulfill the defendants' end of the settlement. The district court granted plaintiff's motion for entry of judgment, but denied the request to find defendants in contempt and for sanctions. The Commonwealth now appeals this order. Two defendants in their personal capacities (Rexach and Jimenez) have supported the plaintiff's appeal with affidavits claiming that they had consented to the settlement agreement.

## II.

### Discussion

*A. Preliminary Issues*

■ As always, we have a duty to question our jurisdiction to hear this appeal. On September 10, 1997, the district court entered judgment pursuant to its June 16, 1997 order, stating:

> The court having entered an order granting plaintiff's "Motion for Entry of Judgment," judgment is hereby entered enforcing the settlement agreement reached by the parties and read in open court on November 25, 1996.

The official capacity defendants, however, had already filed a joint notice of appeal from the court's June 16, 1997 order on June 23, 1997, two and a half months earlier. Obviously, the notice of appeal was premature as no judgment had yet been entered when the notice of appeal was filed. This error need not detain us; a "notice of appeal filed after the court announces a decision or order but before the entry of judgment is treated as filed on the date of and after the entry." Fed. R.App. 4(a)(2); *see First Tier Mortgage Co.* v. *Investors Mortgage Ins. Co.*, 498 U.S. 269, 274–75, 277, 111 S.Ct. 648, 112 L.Ed.2d 743 (1991) (interpreting Rule 4(a)(2)); *Clausen v. Sea–3, Inc.*, 21 F.3d 1181, 1186–87 (1st Cir.1994) (similar). The official capacity defendants' premature notice of appeal relates forward to the date of entry of the final judgment.

■ There is some question, however, regarding whether the judgment below con-

stitutes a "final decision" within the meaning of 28 U.S.C. § 1291. "A final decision under § 1291 is one that 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" *State St. Bank & Trust Co. v. Brockrim, Inc.,* 87 F.3d 1487, 1490 (1st Cir.1996)(quoting *Digital Equipment Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 867, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994)). The district court's June 16, 1997 order, while deciding that the settlement agreement was enforceable, left some subsidiary matters undecided (e.g., additional back pay and attorneys fees), pending a future conference with the court. From what we can tell, no future conference is now contemplated by any party. We thus have no reason to think that the order and concomitant judgment have left any substantial matters in abeyance that require further proceedings in the district court. *See Wang Laboratories, Inc. v. Applied Computer Sciences, Inc.,* 926 F.2d 92, 95–96 (1st Cir.1991).

■ In addition, Negron claims that Rodriguez, Misla and Figueroa do not have standing to challenge the settlement agreement because they were not in office at the time and thus did not participate in the negotiations. This claim is devoid of merit. When the official capacity defendants entered office, they were substituted *automatically* as representatives of the Commonwealth, which is the real party in interest in the official capacity suits. As the current officeholders, their lack of participation in events prior to their ascendancy to office does not alter their substantive rights. *See* Fed.R.Civ.P. 25(d)(1); *Legault v. Zambarano,* 105 F.3d 24, 26 (1st Cir.1997). Moreover, the personal knowledge of both sets of officeholders is irrelevant in this case. We now turn to the agreement.

*B. The Settlement Agreement*

As described above, Law 9 authorizes the AG to indemnify public officials when judgments are obtained against them in their personal capacities. The district court did not order the payment of Law 9 funds in the absence of the AG's approval, but rather ordered the legislature to assume the obligation if approval was not obtained. This contingency has come to pass. The question thus reduces to whether the district court was correct in concluding that the legislature, as an institution, is bound by the settlement agreement allegedly entered into by attorneys Montalvo and Pagan on November 25, 1996.

■ The parties have asserted that the contract law of the Commonwealth of Puerto Rico governs this question. Although disputes regarding settlement agreements are generally resolved according to state contract law, *see Data Gen. Corp. v. Grumman Sys. Support Corp.,* 36 F.3d 1147, 1166 (1st Cir. 1994), the oral agreement at issue here purported to settle a claim brought pursuant to a federal statute on the eve of trial, based on a stipulation placed on the record in federal court. In such circumstances, federal interests are generally sufficient to make federal law the guidepost by which a court should decide whether the parties have entered into an enforceable settlement of that claim. *See Town of Newton v. Rumery,* 480 U.S. 386, 392, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987); *Gamewell Mfg., Inc. v. HVAC Supply, Inc.,* 715 F.2d 112, 115 (4th Cir.1983).

■ We will accept, for the sake of argument, the district court's factual findings: attorneys Pagan and Montalvo "represented unequivocally ... that they were authorized by their clients ... to enter into the settlement"; the attorneys indicated that they had settled plaintiff's case for $300,000; and that the attorneys informed the court that, if the AG did not pay, the legislature would fulfill the terms of the settlement. The official capacity defendants now assert that attorneys Pagan and Montalvo, who represented the prior officeholders, despite their assertions to the contrary, lacked the authority to bind the Commonwealth in the manner contemplated by the district court's order. We agree.

The district court's order only contemplates that the settlement will be fulfilled by the Commonwealth (either via Law 9 or by the legislature) and not from the assets of the personal capacity defendants; the judge did not distinguish in any way between the personal capacity claims and the official ca-

pacity claims. The stipulation reflecting the alleged agreement, moreover, is silent as to whether the parties intended to settle the personal capacity claims, the official capacity claims, or both. Yet the Supreme Court has explained that there is a fundamental distinction between such claims:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." ... [A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citations omitted). Recognizing this distinction, we see two possible ways to conceptualize the disputed agreement as binding on the legislature: as an agreement to indemnify the personal capacity defendants or as a settlement of the official capacity suits.[7] And we suppose that a settlement of a claim by the Commonwealth that would be enforceable against the Commonwealth in federal court would require a waiver, in some form, of the Commonwealth's Eleventh Amendment immunity.

■ It turns out, however, that regardless of how we conceptualize the agreement, this agreement cannot be enforced against the Commonwealth or its legislative body. We think it elementary that a party who seeks to enforce a settlement agreement against a state in federal court must demonstrate that the agent of the state who allegedly entered into the agreement had the power to bind the sovereign. *Cf. Hachikian v. F.D.I.C.,* 96 F.3d 502, 505 (1st Cir.1996) (holding that a party seeking to enforce a settlement agreement against the federal government must demonstrate that the agent who purported to

bind the government had actual authority to do so); *Moore v. Beaufort County,* 936 F.2d 159, 163 (4th Cir.1991) (enforcing settlement in light of a factual finding that an attorney for an election board had actual authority under state law to bind the board). In order to bind the Commonwealth, the three public officials who were sued in their personal and official capacities (Hernandez, Rexach, and Jimenez) must have been vested with the requisite authority to do so when the agreement was consummated.

Whether we conceive of the necessary authority as the power to waive the Commonwealth's Eleventh Amendment immunity and consent to suit in federal court, *see Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Paul N. Howard Co. v. P.R.A.S.A.,* 744 F.2d 880 (1st Cir.1984), to enter into a binding settlement that includes the reinstatement of an employee, *see Morgan v. South Bend Community School, Corp.,* 797 F.2d 471, 479 (7th Cir.1986), and/or to order the indemnification of public officials sued in their personal capacities, we see no basis in the record or in the laws of the Commonwealth, *see P.R. Laws Ann. tit. 32, §§ 3075–3086 (establishing procedures for actions against the Commonwealth), for the assertion that Hernandez, Rexach, and Jimenez, acting through attorneys Montalvo and Pagan, were vested with such legal authority. Enforcing this agreement would obviate the explicit statutory scheme established by Law 9 to settle personal capacity claims against public officials. In addition, the plaintiff has failed to alert us to any statute or regulation authorizing these particular public officials to waive the Commonwealth's Eleventh Amendment immunity or to commit legislative funds to settle litigation. As a result, the district court cannot

---

7. We are at a loss to understand why the Commonwealth did not object to the official capacity suits on the ground that such suits are not authorized under section 1983. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (holding that state officials "acting·in their official capacities" are outside the class of "persons" subject to mone-

tary liability under § 1983). The Commonwealth, however, never raised this obvious defense prior to this appeal and was free to consent to litigation in federal court and to settle a case brought in federal court if it chose to do so. *See Gonzalez Torres v. Toledo,* 586 F.2d 858, 859 (1st Cir.1978).

order the enforcement of the alleged agreement against the legislature.

*Vacated and Remanded. No costs.*