**Sharon BERNIER–APONTE,
et als., Plaintiffs,**

v.

**Jose M. IZQUIERDO–ENCARNACION,
et als., Defendants.**

**CIVIL NO. 01–1953 (DRD).**

United States District Court,
D. Puerto Rico.

Feb. 19, 2002.

Eliezer Aldarondo–Ortiz, Aldarondo & Lopez Bras, Hato Rey, PR, for plaintiffs.

Ivan M. Castro–Ortiz, Hato Rey, PR, for all plaintiffs.

Marie L. Cortes–Cortes, Dept. of Justice, Fed. Litigation Div., San Juan, PR, for defendants.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Before the Court is Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). (Docket No. 28). In essence, Defendants are seeking dismissal of the complaint on two grounds: first, that the original complaint filed by Plaintiffs does not allege minimal facts sufficient to comply with the legal standard established for pleadings in similar cases; and second, that Plaintiffs are constitutionally barred from obtaining monetary relief against those Defendants acting in their official capacity, under the Eleventh Amendment. Plaintiffs opposed the Motion to Dismiss, by filing a Motion Requesting Leave to Amend Complaint and Request to Have the Court Declare Moot Defendants' Motion to Dismiss. (Docket No. 30). For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part.**

### I

### FACTUAL BACKGROUND

■ Pursuant to Fed.R.Civ.P. 12(b)(6), all of the facts alleged in this case are accepted as true, as they appear in the complaint. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988). Because Plaintiffs filed an Amended Complaint, which was accepted by the Court, pursuant to Fed.R.Civ.P. 15(a) (See Docket No. 35), all of the facts alleged in the amended complaint are accepted as true.

Defendants are all officials of the Commonwealth of Puerto Rico's Department of Transportation and Public Works ("DTOP"). Until March 31, 2001, Plaintiffs were employed by the DTOP, as irregular employees.[1] They performed general maintenance duties of state roads and the surrounding areas. At the time of termination, most of the Plaintiffs had either met or were very close to meeting the requirements to acquire permanent status.[2] Plaintiffs are all actively affiliated with the New Progressive Party (PNP) and this was well known by Defendants. Most, if not all, of the irregular positions held by Plaintiffs were filled by persons associated with the Popular Democratic Party (PDP). Moreover, Plaintiffs were not given a valid reason for their dismissal.

Defendants are seeking dismissal of the complaint on two grounds: first, that the complaint does not allege minimal facts sufficient to comply with the legal standard established for pleadings in similar cases; and second, that Plaintiffs are constitutionally barred from obtaining monetary relief against those Defendants acting in their official capacity, under the Eleventh Amendment. (Docket No. 28). Plaintiffs opposed the Motion to Dismiss, by filing a Motion Requesting Leave to Amend Complaint and Request to Have the Court Declare Moot Defendants' Motion to Dismiss. (Docket No. 30).

### II

### MOTION TO DISMISS STANDARD

■ When deciding a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) the Court must accept as true all well-pleaded factual claims, and

---

1. Irregular employees are paid an hourly wage and sometimes their work is seasonal. (*See* Docket No. 36)

2. Permanent status is achieved after working 1,800 hours for three consecutive fiscal years. This is the paramount requirement in Article 8 of Law 110 of July 26, 1958, as amended, 3 L.P.R.A. § 711g (*See* Docket No. 36).

indulge all reasonable inferences in Plaintiffs' favor. *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). In order to survive a motion to dismiss, Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooley v. Mobil Oil Corp.* 851 F.2d 513, 515 (1st Cir.1988). Although all inferences must be made in Plaintiffs' favor, the Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson*, 83 F.3d at 3.

■ Moreover, when considering a motion to dismiss under Rule 12(b)(6) the Court must limit its focus to the allegations of the complaint. *Litton Indus., Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir.1978). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim...." *Id.; see also Doyle*, 103 F.3d at 190.

Recently, in *Rogan v. Menino*, 175 F.3d 75 (1st Cir.1999) the Court held that a dismissal for failure to state a claim can only be upheld if, after giving credence to all well pleaded facts and making all reasonable inferences in the plaintiff's favor, the factual averments do not justify recovery on some theory asserted in the complaint. *Id.* at 77. With this standard in mind, all of the facts alleged in the complaint are accepted as true. *See Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989); *Gooley*, 851 F.2d at 514.

## III

## PLEADINGS UNDER § 1983

■ Defendants's first argument is that the complaint originally filed (Docket No. 1) does not comply with the "heightened pleading standard of [*Darmouth Review, supra*, which] still is viable in section 1983 cases where an improper motive by state actors was an essential element of the plaintiff's claim." (See Docket No. 28, p. 6–7). In other words, the gist of their argument is that the original complaint does not allege "minimal facts, not subjective characterizations, as to who did what to whom and why." *Dewey v. University of New Hampshire*, 694 F.2d 1, 3 (1st Cir.1982). Nevertheless, the Court finds that this argument has been rendered moot by the filing of an amended complaint (Docket No. 36), which was subsequently accepted by the Court. (Docket No. 35). The Court has closely examined the amended complaint and finds that it properly addresses the alleged deficiencies proffered by Defendants. The complaint is sufficient at least as to a First Amendment civil rights claim under 42 U.S.C. § 1983 because plaintiffs all belong to the P.N.P. and were replaced allegedly by persons from the opposing party, precisely because they were members of the P.N.P. Thus, they allege they were terminated and/or not renewed in their positions due to their political affiliation. Moreover, in light of the liberal norm that "[a]ll pleadings shall be so construed as to do substantial justice," the Court finds that Defendants first argument is insufficient and thus **denied as moot.** *See* Fed.R.Civ.P. 8(f).[3]

---

**3.** The argument of dismissal, considering the First Amendment claim, borders on frivolousness, for which the Court could have considered imposing sanctions under Fed.R.Civ.P. 11(c). The Court holds its hand, however, because other arguments as to other matters are indeed meritorious.

## IV

## ELEVENTH AMENDMENT IMMUNITY

Defendants' next argument turns on the principle that a claim for monetary damages against a defendant acting in his state official capacities is precluded by the Eleventh Amendment of the Constitution. Plaintiffs seek punitive and compensatory damages and attorney fees for alleged civil rights violations under 42 U.S.C. § 1983. Defendants argue that as long as monetary damages are sought with regard to appearing State officers **in their official capacities,** this complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

 The Eleventh Amendment proscribes that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Eleventh Amendment renders states, including Puerto Rico, immune from claims brought in federal courts by citizens of the same or any other state.[4] *Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority,* 991 F.2d 935, 938 (1st Cir.1993); *De Leon Lopez v. Corporacion Insular de Seguros,* 931 F.2d 116, 121 (1st Cir.1991).

 There are of course exceptions to this rule. Specifically, the Eleventh Amendment protection does not apply in four (4) circumstances: a state may consent to be sued in federal forum; a state may waive its own immunity by statute or the like; Congress may abrogate state immunity; or, if circumstances allow, other constitutional imperatives may take precedence over the Eleventh Amendment's bar. *Metcalf* at 938. In the present case, none of these exceptions are raised.

 Eleventh Amendment immunity does not solely protect the State. Rather, since a State only exists through its instrumentalities, Eleventh Amendment immunity also extends to arms or "alter egos" of the State. *Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of Puerto Rico,* 818 F.2d 1034, 1036 (1st Cir.1987); *see also, Mount Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In addition to state agencies and institutions, Eleventh Amendment immunity may also attach to suits against state officials "when the state is the real, substantial party in interest." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101, 104, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Although, state officials are literally persons, a suit against a state official in his official capacity is not a suit against the official but rather is a suit against the official's

---

**4.** In an unbroken string of cases over the last two decades, the First Circuit consistently has held that Puerto Rico is considered a "State" for Eleventh Amendment purposes, and therefore Eleventh Amendment applies with full force to the Commonwealth of Puerto Rico. *See, e.g., Negron Gaztambide v. Hernandez Torres,* 145 F.3d 410 (1st Cir.1998); *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth.,* 991 F.2d 935, 939 n. 3 (1st Cir.1993); *Aviles–Martinez v. Monroig,* 963 F.2d 2, 8 (1st Cir.1992); *De Leon Lopez v. Corporacion Insular de Seguros,* 931 F.2d 116, 121 (1st Cir. 1991); *Culebras Enterprises Corp. v. Rivera Rios,* 813 F.2d 506, 516 (1st Cir.1987); *Ains-*

*worth Aristocrat Int'l Pty., Ltd. v. Tourism Co. of P.R.,* 818 F.2d 1034 (1st Cir.1987); *Fernandez v. Chardon,* 681 F.2d 42, 59 n. 13 (1st Cir.1982) (Puerto Rico enjoys the full benefits of the Eleventh Amendment); *Ezratty v. Com. of Puerto Rico,* 648 F.2d 770, 776 n. 7 (1st Cir.1981) ("The principles of the Eleventh Amendment, which protect a state from suit without its consent, are fully applicable to the Commonwealth of Puerto Rico."); *Litton Indus., Inc. v. Colon,* 587 F.2d 70 (1st Cir.1978) (action against Puerto Rico barred by Eleventh Amendment, unless immunity is expressly abrogated by Congress acting under the Fourteenth Amendment).

office. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45; *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). As such, it is no different from a suit against the State itself, therefore, immunity attaches to state officials, in their official capacity. *See also, Kentucky v. Graham*, 473 U.S. 159, 165–166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Monell v. Dept. of Social Services of City of N.Y.*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611.

**A. In order for Eleventh Amendment immunity to attach to its employees, the Court must first find that the Department of Public Works and Transportation is an "alter ego" of the Commonwealth of Puerto Rico.**

Eleventh Amendment immunity bars actions for money damages by private citizens against arms or "alter egos" of a State in the federal courts. *Metcalf*, at 938. For immunity to attach, the Court must find that the DTOP is an arm or an "alter ego" of the State. The Court finds that immunity does attach.

As the First Circuit stated in *Metcalf*, questions of this nature pose "an essentially functional inquiry, not easily amenable to bright-line answers or mechanical solutions." 991 F.2d at 939. The mere " 'slice of state power,' without more, will not sate the Eleventh Amendment." *Id.* Only the state itself—or the Commonwealth—and its "arms" receive immunity. Because the Eleventh Amendment's primary concern is to minimize federal courts' involvement in disbursal of the public fisc, a crucial inquiry is whether the state has a legal obligation to satisfy judgments against an institution out of public coffers. *Id.* If so, then, notwithstanding who the nominal de-

fendant is, the real, substantial party in interest would be the state, or the Commonwealth, in the case at bar. As such, the defendant "arm of the state" would be "entitled to invoke sovereign immunity from suit...." *See Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

Because it is not always limpid whether, or to what extent, the state treasury must stand behind the judgment debts of a particular institution, we have identified seven related areas as prospects for further inquiry. These areas, each of which can be mined for information that might clarify the institution's structure and function, include: (1) whether the agency has the funding power to enable it to satisfy judgments without direct state participation or guarantees; (2) whether the agency's function is governmental or proprietary; (3) whether the agency is separately incorporated; (4) whether the state exerts control over the agency, and if so, to what extent; (5) whether the agency has the power to sue, be sued, and enter contracts in its own name and right; (6) whether the agency's property is subject to state taxation; and (7) whether the state has immunized itself from responsibility for the agency's acts or omissions. The list is not an all-inclusive compendium, for other areas of inquiry may prove fruitful in particular circumstances. It is, however, clear that all the pertinent factors have a common orientation: the more tightly the agency and the state are entangled, the more probable it becomes that the agency shares the state's Eleventh Amendment immunity.

*Metcalf*, 991 F.2d at 939–40 (internal citation omitted).[5] The Court now analyses each factor *seriatim*.

---

**5.** *See Ainsworth Aristocrat*, 818 F.2d at 1037 (collecting cases from other circuits recount-ing the same factors).

1. **The DTOP does not possess the funding power necessary to enable it to satisfy judgments without direct Commonwealth participation or guarantees.**

The DTOP is legally unable to satisfy judgments. The DTOP's enabling statute specifically states that only the Commonwealth of Puerto Rico "shall be liable for injuries to persons or property occurring through a defect, or want of repair or of sufficient protection, in or upon a Commonwealth highway in charge or the [DTOP]. . . ." 4 P.R. STAT. ANN., § 422 (1998). Therefore, clearly any judgment for liability that occurs in or upon a highway in charge of the DTOP shall not be paid by that agency, but by the Commonwealth directly. This factor weights in favor of concluding that the DTOP is a mere arm of the Commonwealth.

2. **The DTOP's function is governmental in nature.**

In essence, the DTOP was created to develop projects for all public works; draft and sign, in behalf of the Commonwealth all contracts and agreements made for carrying out the construction or repair of public works, and all works that may be of general use and benefit to the Commonwealth, and all constructions that may be destined for services of which the Commonwealth government has charge; and it is in charge of keeping in good condition the Commonwealth's reads, among other duties. See 4 P.R. STAT. ANN., §§ 412, 417–418 & 421 (1998). Thus, clearly the DTOP fulfills key governmental functions. This factor also weighs in favor of concluding that the DTOP is a mere arm of the Commonwealth.

3. **The DTOP is not separately incorporated.**

This is a key factor that is easily checked. Because public corporations are creatures of law, the Court must look to the law to ascertain whether the DTOP is a public corporation. *See University of Rhode Island v. A.W. Chesterton Company,* 2 F.3d 1200, 1204 (1st Cir.1993); *see also Moor v. County of Alameda,* 411 U.S. 693, 721 n. 54, 93 S.Ct. 1785, 1801 n. 54, 36 L.Ed.2d 596 (1973)(undertaking "a detailed examination of the relevant provisions of California law" in order to ascertain nature of an Alameda County agency). The Court has carefully examined the DTOP's enabling statute, and finds that nowhere does it state that it is separately incorporated. Thus, obviously, the DTOP is not a separately incorporated entity. This factor **weighs heavily** in favor of concluding that the DTOP is a mere arm of the Commonwealth. And as the First Circuit stated in *University of Rhode Island,* "most unincorporated state agencies and departments are readily recognized as mere 'arms' or 'alter egos' of the State" that created them. *See* 2 F.3d at 1204.

4. **The Commonwealth exerts complete control over the DTOP.**

The DTOP is a public agency, created originally under the Bureau of the Interior by the Political Code of 1902 and subsequently as an independent Commonwealth's Agency by the Reorganization Plan, No. 10 of 1950 and the reorganization Plan No. 6 of 1971, 3 P.R. STAT. ANN., § 411 *et seq.* App. III. (Docket No. 6). In addition, the Governor appoints the Secretary of the DTOP and Commonwealth provides budget. Also, the DTOP does not have juridical persona apart from the Commonwealth. (Docket No. 6). Since, the government of Puerto Rico retains control over the DTOP and any award would be paid out of the Commonwealth Treasury, the Court finds that this factor weighs heavily in favor of concluding that the DTOP is an arm of the State.

### 5. The DTOP does not have the power to sue, be sued, and enter contracts in its own name and right.

As stated before, the DTOP's enabling statute specifically states that only the Commonwealth of Puerto Rico "shall be liable for injuries to persons or property occurring through a defect, or want of repair or of sufficient protection, in or upon a Commonwealth highway in charge or the [DTOP]...." 4 P.R. STAT. ANN., § 422 (1998). Therefore, clearly the DTOP does **not** have the power to sue, or be sued separately from the Commonwealth. Also, the DTOP's enabling statute provides that its Secretary shall have power "[t]o draft and sign, *[o]n behalf of the Commonwealth of Puerto Rico,* all contracts and agreements made for carrying out the construction or repair of public works or for the purchase of materials." 4 P.R. STAT. ANN., § 412(2) (1998). Thus, the Secretary cannot draft and sign contracts and agreements on behalf of the DTOP, but on behalf of the Commonwealth. Clearly, this is additional statutory evidence in favor of concluding that the DTOP is a mere arm of the Commonwealth.

### 6. The DTOP's property is not subject to state taxation.

The Court has closely examined the DTOP's enabling statute and has not found any provision with respect to this factor. Nothing in the statute indicates whether the DTOP is or is not subject to state taxation. Again, because the DTOP is a creature of law, a specific disposition providing for state taxation would be necessary. Since the DTOP's organic act is bereft of such statutory language, the Court must conclude that the DTOP is not subject to state taxation. This is yet another factor pointing to the conclusion that the DTOP is a mere arm of the Commonwealth.

### 7. The Commonwealth has not immunized itself from responsibility for the DTOP's acts or omissions.

As stated before, the DTOP does not have juridical persona apart from the Commonwealth. (Docket No. 6). And because the government of Puerto Rico retains control over the DTOP and any award would be paid out of the Commonwealth Treasury, 4 P.R. STAT. ANN., § 422 (1998), the Court finds that this, and all the factors stated above, point to the unavoidable conclusion that the DTOP is an mere arm of the State. Accordingly, the DTOP's employees, acting in their official capacities, are in reality employees of the Commonwealth. As such, they are entitled to Eleventh Amendment immunity.

### B. Claims Against State Officials acting in their Official Capacity, for Money Damages, are essentially claims against the State itself, therefore, Barred under Eleventh Amendment immunity.

Indisputably, in the absence of a waiver, the Eleventh Amendment bars actions for money damages against an arm or "alter ego" of the Commonwealth. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Johnson v. Rodriguez,* 943 F.2d 104, 109 (1st Cir.1991). The Eleventh Amendment bars the recovery of damages in federal court against the Commonwealth of Puerto Rico. *Ramirez v. Puerto Rico Fire Service,* 715 F.2d 694, 697 (1st Cir. 1983), and, by the same token, it bars the recovery of damages in official capacity suits brought against Puerto Rico officials where recovery will come from the public fisc. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). When a suit seeks equitable relief or money damages from a state officer for injuries suffered in the past, the interests in

compensation and deterrence are insufficiently weighty to override the State's sovereign immunity. *Will*, at 89–90, 109 S.Ct. 2304; *see also, Papasan v. Allain*, 478 U.S. 265, 278, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985); *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

■ Defendants, in this action, were sued both in their personal and official capacity as high ranking officials of the DTOP. Insofar as Defendants are sued for actions taken in their official capacities, this is "only another way of pleading an action against ... ultimately, the Commonwealth of Puerto Rico." *Culebras*, at 516; *see also Kentucky*, at 165, 105 S.Ct. 3099; *Ford Co. v. Department of Treasury*, 323 U.S. 459, 463–64, 65 S.Ct. 347, 89 L.Ed. 389 (1945).

Absent a waiver by a State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court, a bar that remains in effect when state officials are sued for damages in their official capacity. *Kentucky*, at 159, 105 S.Ct. 3099. The Eleventh Amendment precludes such actions for money damages, therefore, the Court finds that actions for money damages against Defendants acting in their official capacities are dismissed.

**C. Only prospective injunctive relief is allowed against Defendants acting in their official capacity.**

■ The several states (including Puerto Rico) are, as a general rule, immune under the Eleventh Amendment from private suit in the federal courts, absent their consent. One of the exceptions to this rule, however, is the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which allows a plaintiff to enforce a claim of federal right by obtaining injunctive or declaratory relief against a state officer in the officer's official capacity. But this exception is to prevent continuing violations of federal law, not to remedy past violations. Thus, under *Ex parte Young*, a plaintiff may obtain prospective, not retrospective, relief. *See Greenless v. Almond*, 277 F.3d 601, 606 (1st Cir.2002) (*citing Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). Thus, an official-capacity suit is the typical way in which federal courts have held States responsible for their duties under federal law. Such a suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky*, at 165, 105 S.Ct. 3099 (1985) (*quoting Monell*, at 690, n. 55, 98 S.Ct. 2018 (1978)); *see also Pennhurst*, at 101, 104 S.Ct. 900 (1984). *Edelman's* distinction between prospective and retroactive relief fulfilled *Young's* underlying purpose of vindicating the supreme authority of federal law, while at the same time preserving to an important degree the States' constitutional immunity. *Pennhurst*, at 89–90, 104 S.Ct. 900.

■ A state official in his official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Will*, at 58, 109 S.Ct. 2304; *Kentucky*, 473 U.S., at 167, n. 14, 105 S.Ct. 3099; *Young*, at 159–160, 28 S.Ct. 441. Such a suit would not be one against the State since the federal-law allegation would strip the state officer of his official authority. *Young*, at 159–160, 28 S.Ct. 441.

■ Although prospective relief awarded against a state officer also raises Eleventh Amendment concerns, the interests in ending a continuing violation of federal law outweigh the interests in state sovereignty and justify an award under § 1983 of an

injunction that operates against the State's officers. *Will*, at 89–90, 109 S.Ct. 2304; *see also, Mansour*, 474 U.S. at 68, 106 S.Ct. 423; *Papasan*, 478 U.S. at 282, 106 S.Ct. 2932; *Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Milliken v. Bradley*, 433 U.S. 267, 289, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). Therefore, when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief. *Edelman*, at 666–667, 94 S.Ct. 1347. The Court holds that a state official in his official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity instructions for prospective relief are not treated as actions against the State. As the First Circuit restated in *Mills v. Maine:*

> *Ex parte Young* allows a way around the bar to federal jurisdiction erected by the Supreme Court's Eleventh Amendment jurisprudence only in cases where prospective declaratory or injunctive relief is sought under federal law. The *Ex parte Young* doctrine does not apply in cases where plaintiffs seek monetary relief for past violations of federal law, regardless of whether the party the plaintiffs seek to designate as a defendant is nominally a state officer sued in his official capacity.

118 F.3d 37, 54 (1st Cir.1997)(internal citations omitted). Therefore, to the extent that prospective injunctive—but not retrospective—relief is sought by Plaintiffs, the Defendants in this case have been properly joined in their official capacities. *See also Metcalf*, 991 F.2d at 938 & n. 2 and cases cited therein.

## V

### CONCLUSION

The Court has closely examined Plaintiffs amended complaint and finds that it properly addresses the alleged deficiencies proffered by Defendants in their motion to dismiss. Therefore, in light of the liberal norm that "[a]ll pleadings shall be so construed as to do substantial justice," the Court finds that Defendants first argument—that the originally filed complain fails to allege facts sufficient to comply with the legal standard established for § 1983 cases—shall be **denied**. *See* FED.R.CIV.P. 8(f).

Furthermore, the Eleventh Amendment prevents suits seeking monetary relief to be paid out from the state treasury. Any attempt to sue a state officer in his or her official capacity for the only purpose of seeking monetary relief will be barred by the Eleventh Amendment. *Vega Castro v. Puerto Rico*, 43 F.Supp.2d. 186, 192 (1999). Thus, in order to sue a state officer in his or her official capacity, a party must seek injunctive, not monetary relief. Thus, the Court **grants** Defendants' motion to dismiss Plaintiffs claims for **monetary damages in their official capacities.**

**WHEREFORE,** Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part.** The Court stresses however that the case will remain pending with respect to the Defendants acting in their official capacities, for prospective injunctive relief purposes only; and, of course, the case will also continue against Defendants in their personal capacities with respect to all other claims.

**IT IS SO ORDERED.**