**SISTEMAS URBANOS, INC.,**
et al., Plaintiffs,

v.

**Angelino LUGO RAMOS,**
et al., Defendants.

Civil No. 03–1653 (JAG).

United States District Court,
D. Puerto Rico.

Feb. 9, 2006.

Ruben T. Nigaglioni, Ruben T. Nigaglioni Law Offices, Rafael J. Martinez Garcia, Nigaglioni & Ferraiuoli Law Offices PSC, San Juan, PR, for Plaintiffs.

Ana M. Margarida–Julia, Jo–Ann Estades–Boyer, Department of Justice, Commonwealth of Puerto Rico, Maria Judith Surillo, Department of Justice, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On June 12, 2003 plaintiffs Sistemas Urbanos, Inc. ("Sistemas Urbanos") and the Municipality of Yauco ("Yauco")(collectively "plaintiffs") filed this action against defendants Angelino Lugo Ramos ("Lugo"), in his personal and official capacity as Regional Director of the Department of Transportation and Public Works ("DTPW"), and Luis M. Trinidad Garay ("Trinidad"), in his personal and official capacity as Executive Director of the DTPW (collectively "defendants"), alleging civil rights violations pursuant to 42 U.S.C. § 1983 (Docket No. 1). On April 19, 2005, defendants moved for summary judgment against plaintiffs' claims (Docket No. 77, 79). On July 22, 2005, plaintiffs opposed (Docket No. 92). For the reasons discussed below, the Court **DENIES** defendants' motion for summary judgment.

## FACTUAL BACKGROUND[1]

Sistemas is a corporation that engages in the advertisement industry through the installation of street furniture in the different municipalities of the Commonwealth of Puerto Rico. Yauco, as a municipality of the Commonwealth, is empowered to administer, lease, or dispose of its public or patrimonial property. Pursuant to Ordinance 293 (2001–02), approved by the Municipal Assembly of Yauco, Plaintiffs subscribed a contract according to which Sistemas would donate and install certain street furniture equipment on sidewalks and other areas under Yauco's control. Yauco would lease those areas to Sistemas who would, in turn, commercially exploit the advertising space that forms part of the street furniture equipment.

Accordingly, Sistemas, with Yauco's authorization and consent, installed three information panels, a digital clock, and a thermometer on the median strip of road PR–128. PR–128 is a state road that crosses Yauco's urban area, connecting Yauco to the Municipalities of Guanica and Guayanilla. It is mostly a two lane road, with traffic flowing in both directions. The median strip, which runs parallel to the sidewalks, divides the lanes where traffic flows in opposite directions. In addition to a clearly marked easement for the use of crossing pedestrians, this median strip contains palm trees and flower beds.

Sistemas did not obtain DTOP's permission to install its street furniture on the median strip of PR–128. DTOP considered that said installation was illegal, so, on May 15, 2003, it forwarded a letter to Sistemas requesting the removal of the street furniture in question. Sistemas replied by letter dated May 21, 2003 denying that the structures were illegal. Sistemas

and DTOP met on May 22, 2003 to discuss the installation of street furniture in the Municipality of Humacao. At this meeting, DTOP gave Sistemas a memorandum dated December 19, 1996 addressing the issue of right-of-ways in highways. This memorandum had been prepared in response to a situation created by a company other than Sistemas. Sistemas responded to this memorandum through a letter dated May 23, 2003. After this communication, on June 5, 2003, personnel from DTOP, under the direction and control of Lugo, removed the street furniture from PR–128's median strip. This removal was carried out without Yauco's or Sistemas' consent.

On November 19, 2004, Lugo filed an incident report with the Puerto Rico Police Department alleging that the street furniture located alongside Road No. 128 in the municipality of Yauco had to be removed because it was in violation of Puerto Rico Law. On December 10, 2004, Sistemas Urbanos received information that the DTPW was adhering stickers to its street furniture located within the municipality of Ponce, indicating that they would be removed for violating Puerto Rico Law. Shortly thereafter, Sistemas Urbanos learned that defendants had placed similar stickers on its street furniture located within the municipalities of Bayamon, San Juan, Lajas, Caguas, Humacao, Sabana Grande, Arroyo, Arecibo, Loiza, Hatillo, Guayama, and Patillas. Furthermore, while placing the stickers, defendants have used a razor to cut them so as to make them more difficult to remove, possibly damaging the surface of each piece of street furniture. The physical damages are estimated at twenty-five thousand dollars ($25,000).

---

1. Since they are largely undisputed, the Court culls the relevant facts from its previous Opinions in this case (Docket Nos. 17 and 81).

*See Sistemas Urbanos v. Lugo Ramos,* 313 F.Supp.2d 35 (D.P.R.2004); 368 F.Supp.2d 160 (D.P.R.2005).

## DISCUSSION

### A. Summary Judgment Standard

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); See also Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. See Suarez v. Pueblo Int'l, Inc., 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Id. at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." Maldonado–Denis v. Castillo–Rodriguez, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs–Ryan v. Smith, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina–Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990).

### B. Defendants' Motion for Summary Judgment

#### 1. Due Process

■ Defendants' due process argument must fail because it simply misstates the argument actually raised by plaintiffs. Plaintiffs do not claim in their complaint that defendants did not give them notice and an opportunity to be heard before removing the street furniture. Rather plaintiffs claim that the removal of the street furniture constitutes a "taking" and that the defendants did not comply with the requirements of law before "taking" their property.

■ The Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. Amend. V. This provision

does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a "reasonable, certain, and adequate provision for obtaining compensation exist at the time of the taking."

*Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). It is applicable to the states through the Fourteenth Amendment. *See Chicago, Burlington & Quincy R.R. Co. v. Chicago,* 166 U.S. 226, 239, 17 S.Ct. 581, 41 L.Ed. 979 (1897); *Culebras Enters. Corp. v. Rivera Rios,* 813 F.2d 506, 515 (1st Cir.1987). A "taking" may occur by either a physical invasion of plaintiff's property, no matter how minute the intrusion, or when a regulation denies the owner of all economically beneficial or productive use of land. *See Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). If state law establishes a "reasonable, certain and adequate" provision for relief, a "property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson,* 473 U.S. at 194–95, 105 S.Ct. 3108. Furthermore, if no such procedure exists, the plaintiffs have the burden of proving that a state remedy is unavailable. *Deniz v. Municipality of Guaynabo,* 285 F.3d 142, 147 (1st Cir.2002).

The parties here, however, have failed to properly argue under the appropriate legal standard whether or not the action complained of in this case rises to the level of a "taking" which triggers the constitutional requirement that defendants compensate the plaintiffs. Furthermore, if it does, then plaintiffs must also show that state remedies are unavailable or inadequate before this Court can consider their claims any further. Thus, the court is not in a position at this time to decide the "taking" issue.

### 2. *Equal Protection of the Law*

■■ When, as here, a plaintiff is challenging governmental action, rather than legislation, under the Equal Protection Clause, the plaintiff may proceed under the theories of "a class of one" or selective enforcement. A plaintiff may successfully raise a claim as a "class of one", "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)(*citing Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989)). "Different treatment of a class of even one individual may be sufficient to state a claim under the Equal Protection Clause." *Lopez Rosario v. Police Dept.,* 126 F.Supp.2d 167, 174 (D.P.R.2000)(*citing Id.*). In like manner, to establish a claim of selective enforcement, plaintiffs must show that (1) they, "compared with others similarly situated, [were] selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rubinovitz v. Rogato,* 60 F.3d 906, 909–10 (1st Cir.1995)(*citing Yerardi's Moody St. Restaurant & Lounge, Inc. v. Board of Selectmen,* 878 F.2d 16, 21 (1st Cir.1989)).

In their motion, defendants fail to address either of these theories. Defendants limit themselves to stating that the government has a compelling state interest in

maintaining safe conditions throughout the island's highways. The defendants would indeed be required to show a compelling interest under strict scrutiny review if the plaintiffs were challenging legislation, rather than government action, under the Equal Protection Clause which interferes with fundamental rights or which discriminates based on a suspect classification such as race, national origin, alienage, indigency, and illegitimacy. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 61, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Because there is no challenge to legislation here, defendants' argument is inapplicable to plaintiffs' Equal Protection claim and must be denied.

### 3. *Eleventh Amendment Immunity*

 The Eleventh Amendment bars suits against states for money damages unless the state has consented. *See Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority*, 991 F.2d 935, 938 (1st Cir.1993); *In re San Juan Dupont Plaza Hotel Fire Lit.*, 888 F.2d 940, 942 (1st Cir.1989); *Ramirez v. P.R. Fire Serv.*, 715 F.2d 694, 697 (1st Cir.1983).[2] Eleventh Amendment Immunity extends to arms or "alter egos" of the State. *Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico and Caribbean Cardiovascular Center Corp.*, 322 F.3d 56 (1st Cir.2003); *Bernier–Aponte v. Izquierdo–Encarnacion*, 196 F.Supp.2d 93, 98–99 (D.P.R.2002). Similarly, suits filed against state officials in their official capacity are deemed actions against the state, regardless if the state is a named party to the suit, since the real party in interest is the State and not the official. *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Will v.*

*Mich. Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Even when state officials act under color of state law pursuant to § 1983, the Eleventh Amendment bars monetary claims against them in their official capacity. *Id.* at 98–99; *see also Kostka v. Hogg*, 560 F.2d 37 (1st Cir.1977). "Although state officials are literally persons, a suit against a state official in his official capacity is not a suit against the official, but rather a suit against the official's office." *Bernier–Aponte*, 196 F.Supp.2d at 98. However, "the fact that an official acts under color of law does not mean that he or she becomes the state—when sued in his or her individual capacity—he or she is a person for the purpose of § 1983 and enjoys no Eleventh Amendment immunity." *Torres v. U.S.*, 24 F.Supp.2d 181 (D.P.R.1998). Therefore, officials acting under color of state law may nonetheless be liable for damages in their personal capacity.

 In this case, the Eleventh Amendment Immunity is inapplicable, first, because plaintiffs did not sue either the Commonwealth of Puerto Rico or any of its instrumentalities. Second, although the defendants are being sued in their official capacity, the Eleventh Amendment Immunity does not bar the issuance of injunctive relief against the official capacity defendants. And third, because they are also sued in their individual capacities, any damage award would not be paid from the Commonwealth's coffers, but rather from defendants' own assets.

### 4. *Qualified Immunity*

 "[G]overnment officials performing discretionary functions generally

---

**2.** The Eleventh Amendment provides that: "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any

Foreign State." U.S. Const. Amend XI. Puerto Rico is considered a state for Eleventh Amendment purposes. *See Bernier–Aponte v. Izquierdo–Encarnacion*, 196 F.Supp.2d 93, 98 (D.P.R.2002)(*citing Negron Gaztambide v. Hernandez Torres*, 145 F.3d 410 (1st Cir.1998)).

are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The First Circuit employs a three-part test when determining if a public official is entitled to qualified immunity: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." *Mihos v. Swift,* 358 F.3d 91, 102 (1st Cir.2004)(*citing Suboh v. District Attorney's Office of Suffolk Dist.,* 298 F.3d 81, 90 (1st Cir.2002); *Harlow,* 457 U.S. at 818–819, 102 S.Ct. 2727).

▮ In this case, the qualified immunity analysis cannot continue beyond the first prong. As discussed above, the parties in this case have not placed the Court in a proper position to decide whether under the facts of this case a constitutional violation has been established. Without the answer to that threshold question, the Court cannot continue with the qualified immunity analysis and it must be denied at this stage without prejudice. *See Gonzalez–Alvarez v. Rivero–Cubano,* 426 F.3d 422, 429–31 (1st Cir.2005).

### CONCLUSION

For the foregoing reasons, the Court **DENIES** defendants' motion for summary judgment.

IT IS SO ORDERED.