Ferdinand **RODRIGUEZ**, et al.

v.

**PUERTO RICO MARINE MANAGEMENT, INC.,**
**et al., Defendants.**

**Civil No. 94–1619(DRD).**

United States District Court,
D. Puerto Rico.

July 29, 1997.

Pedro J. Salicrup, Hato Rey, PR, for Plaintiffs.

Rafeal Cuevas-Kuinlam, Antonio Cuevas-Delgado, Cuevas, Kuinlam & Bermudez, Hato Rey, PR, Francisco Chevere, Manuel Fernandez-Bared, McConnell Valdes, San Juan, PR, Salvador Antonetti-Zequeira, Luis A. Oliver-Fraticelli, Fiddler, Gonzalez & Rodriguez, Francisco A. Ojeda-Diez, Dept. of Justice, San Juan, PR, Lino J. Saldana, Hato Rey, PR, for Defendants.

DOMINGUEZ, District Judge.

Plaintiffs, retired employees of Puerto Rico Marine Management Inc., filed the present action after their retirement benefits were reduced to correct a miscalculation in the computation of their benefits. Plaintiffs filed this action against Puerto Rico Marine Management Inc. ("PRIMI"), Buck Consultants, Inc. ("Buck"), Puerto Rico Maritime Shipping Authority ("PRMSA"), and Juan Albors, president of the board of directors of PRMSA, for alleged violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.;* the Older Worker Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f)(1) *et seq.;* the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001; section 1983 of the Civil Rights Act, 42 U.S.C. § 1983; Puerto Rico's Law 100, P.R. Laws Ann. tit. 29 § 146 *et seq.;* and breach of contract.

Pending before the Court is defendant Buck's Motion to Dismiss(Docket No. 42) and Plaintiffs' Opposition and Request for Partial Summary Judgment (Docket No. 87)[1] The Court entertained oral arguments on these and other motions on June, 1997.

## CONTENTIONS OF THE PARTIES

In pertinent part, Plaintiffs contend: 1) that they were constructively discharged because of their age in 1992; 2) that they were deliberately forced to retire through an enticing and lucrative retirement plan based exclusively on age criteria; 3) that Buck Consultants Inc. is responsible under ADEA and Law 100 as agent, co-employer and "co-conspirator of an illegal scheme to discriminatorily dismiss the plaintiff [sic] and further develop a cover-up for the discrimination with a false and pretextual, early retirement plan created with the inherent purpose of covering up the age-discrimination"; and 4) that Buck is a co-employer violator of OWB-

---

1. The parties have filed numerous other motions and supplemental documentation in response to the aforementioned. Buck filed a Supplementary Motion to Dismiss (Docket No. 81). Co-defendant PRMMI filed an Opposition to Buck's Motion to Dismiss with attachments(docket No. 83). Buck filed a Reply to Plaintiffs' Opposition and Request for Partial Summary Judgment (Docket No. 96) with attachments. PRMMI filed an opposition to Plaintiffs' statement of Contested Facts with supporting documentation (Docket No. 95). Finally, Plaintiffs filed a Supplementary Opposition and Request for Partial Summary Judgment(Docket No. 120). The Court has considered all these motions in the disposition of the above.

PA "by inducing Plaintiff to sign waivers under said Act, and more than a year later, deliberately recant of their previous representation and express obligations by unilaterally proposing PRMMI to violate the waivers." Finally, Plaintiffs argue that Buck is responsible as a fiduciary under ERISA for the unilateral reduction of Plaintiffs' benefits.

Defendant Buck contends that the Court should dismiss all the claims against it because Buck Consultants, Inc. merely provided actuarial services to co-defendant PRMMI. Buck further argues that it is not an employer, co-employer or agent of PRMMI for purposes of ADEA, Law 100, or OWBPA; 2) Buck has no contractual relationship with defendants; 3) Buck is not a fiduciary under ERISA; and 4) Buck is not an arm of the state, thus, no § 1983 liability may ensue against it.

**STANDARD OF REVIEW**

As the Court indicated at the hearing of June, 1997, the filing of statements of uncontested and contested facts with attached documentation in the subsequent filings for and against Buck's Motion to Dismiss has converted said motion into one for summary judgment. Thus, both, the Motion to Dismiss by Buck (Docket No. 42) and Plaintiff's Opposition and Request for Summary Judgment (Docket No. 87) will be considered under Fed.R.Civ.P. 56 standard. *Vega–Rodriguez v. Puerto Rico Telephone Co.*, 110 F.3d 174, 177 (1st Cir.1997); *Garita Hotel Ltd. v. Ponce Federal Bank*, 958 F.2d 15, 18–19 (1st Cir.1992).

The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary" *Vega–Rodriguez*, 110 F.3d at 178 (1st Cir.1997) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)). A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ..." Fed.R.Civ.P. 56(c). "To defeat a motion for summary judgment, the nonmoving party must demonstrate the existence of a trial worthy issue as to some material fact." *Cortés–*

*Irizarry v. Corporación Insular,* 111 F.3d 184, 187 (1st Cir.1997). "In applying this formulation, a fact is 'material' if it potentially affects the outcome of the case", *Vega–Rodriguez,* 110 F.3d at 178, and "genuine" "if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortés–Irizarry,* 111 F.3d at 187. "Speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant in the face of a properly documented summary judgment motion. Moreover, even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.* 95 F.3d 86, 95 (1st Cir.1996) (citations omitted)

Further, pursuant to Local Rule 311.12, the proponent of a summary judgment motion shall serve and file "annexed to the motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each material fact, *properly supported by specific reference to the record.*" *(emphasis ours)*. Local Rule 311.12. These facts are deemed admitted unless the nonmoving party files a similarly "separate, short, and concise statement of the material facts as to which it contends that there exists a genuine issue to be tried, *properly supported by specific reference to the record.*" *Id.*

A fellow district Judge, recently underscored the importance of this rule to "lay[ ] out the material facts in dispute clearly for a district court that is swamped with an overwhelming number of civil and criminal dispositive motions." *Dominguez v. Eli Lilly and Co.,* 958 F.Supp. 721, 727 (D.P.R.1997). "Without such a rule, the Court would have to search through the record, with or without the assistance of counsel, for lurking evidence of a genuine issue of material fact. Local Rule 311.12 prevents 'the recurrent

problem of ferreting through the record' and 'the specter of district judges being unfairly sandbagged by unadvertised factual issues.'" *Id.* (quoting *Stepanischen v. Merchants Despatch Transport. Corp.,* 722 F.2d 922, 920–31 (1st Cir.1983) (internal citations omitted)). Moreover, "[w]ithout specific references to the Record, the list of uncontested and contested facts does not serve its purpose. The Court would have to continue to ferret through the record, read all the answers to the interrogatories, study all the attached documents, and carefully scrutinize all the depositions for lurking genuine issues of material fact." *Id.* Accordingly, failure to comply with the "anti-ferreting rule" can have severe consequences; indeed, as *"Stepanischen* warns . . . [,] the failure to make specific references to the Record 'would, where appropriate, be grounds for judgment against the party.'" *Id.* (quoting *Stepanischen,* 722 F.2d at 931).

## VIOLATIONS OF THE ANTIFERRETING RULE

Plaintiffs, despite having triggered the summary judgment standard through the filing of their Opposition and Request for Partial Summary Judgment (Docket No. 87), have been the most recalcitrant transgressors of the anti-ferreting rule. The statement of uncontested facts included in Plaintiff's Opposition and Request for Partial Summary Judgment consists of a nine page list of thirty three "uncontested facts" plagued with speculation, argumentation, conclusory assertions, and unsubstantiated facts without specific reference to the rec-

ord.[2] In this respect, defendant Buck filed a motion to strike certain portions of Plaintiffs' statement of uncontested facts on June 10, 1996(Docket No. 97).

The Court partly granted defendants' unopposed motion to strike on March 31, 1997, striking specific portions of Plaintiffs' statement of uncontested facts. See Docket No. 117. Plaintiffs, then, filed a similarly inadequate motion purporting to cure the defects of their first statement of contested facts. *See* Supplementary Opposition to Buck Consultants, Inc. Motion to Dismiss in Accordance to Rule 56(e), (f) (Docket No. 120). This motion, which included the entire two hundred (200) page transcript of the deposition of Mrs. Iris Hernandez as Exhibit 1, barely stated that "the deposition clearly establishes and confirms the factual version submitted with our opposition". *Id.* at p. 2., ¶ 5. This motion again failed to comply with the anti-ferreting rule, because it is filled with generalities, argumentation, conclusory assertions, and unsubstantiated facts and again does not make specific reference to the record.[3]

Additionally, as if the record was not cluttered enough, on May 22, 1997, almost a year after defendants filed their motion to strike and more than a month after the Court issued its order striking portions of Plaintiffs' statement of uncontested facts, plaintiffs for the first time opposed the motion to strike through a Motion for Reconsideration (Docket No. 123) which included the whole deposition of Mr. Ferdinand Rodriguez in support

---

2. There are uncontested facts which are argumentations or conclusory characterizations that speculate as to defendants intentions and actions without any evidentiary support: # 4; # 5; # 7 sentences five and seven; # 9(e)(f)(s); # 11 first clause of sentence one, and last three sentences; # 15. There are uncontested facts for which there is simply no reference to any supporting documentation: # 7, last four sentences; # 9(c)last sentence. There are uncontested facts which refer to exhibits but leave out the specific location of the evidentiary support within the exhibit: # 9(h)-(r); # 12; # 13; # 14. Finally, and most distressing, there are uncontested facts which are simply not supported by the proposed exhibits, thus, portraying a misleading version of the facts: # 7 second sentence; # 9(g). In particular, plaintiffs contention that Buck performed work on the ERP before February 1991, is not

supported by the invoice of February 7, 1991, nor by any other evidence in the record.

3. For example, ¶ 6 states in general terms that "[a]ll the actions and omissions pointed out in the Opposition . . . under the subtitle 'Buck did the following' are completely confirmed by the admissible testimony of Hernández." In support of this overbroad statement plaintiffs generally refer the Court to Iris Hernandez' Deposition pgs. 56, 70, 71–75, 116–134, 138–158, 160–161, and 175. Similarly, ¶ 8, refers the Court to pages 56–161 of Hernández's deposition, for the general proposition that "there should be no doubt after reading Hernández deposition that Buck controlled PRMMI's essential employment functions as grantor of pension payments and medical benefits."

of certain portions that were stricken, and requesting reconsideration of some other portions. This submittal again failed to make any specific reference to the pertinent portions of Mr. Ferdinand Rodriguez' deposition.

Defendants are not altogether free of guilt. Although co-defendant PRMMI filed a Statement of Contested Facts (Docket No 95), Buck did not file any such statement but instead filed, together with a Reply to Plaintiffs Motion for Partial Summary Judgment (Docket No 96), a Motion to Strike plaintiffs' statement of contested facts, including objections to the evidence proffered by plaintiffs (Docket No. 97).

## FACTS

Notwithstanding the countless hours wasted due to the numerous violations of the anti-ferreting rule, the Court independently reviewed all the documents submitted by the parties. To the extent any of the "facts" are material, and supported by the record, they will be discussed below. The Court sets forth the facts not in controversy relevant to Buck's motion to dismiss in the light most favorable to the Plaintiffs.

On or about November 19, 1991, PRMMI offered its employees an Early Retirement Plan ("ERP"). The eligibility criteria for the ERP included age factors, specifically that the employee be at least 50 years of age and a participant in PRMMI's Retirement Plan ("the Retirement Plan") for the previous five years.[4] The ERP entailed enhanced benefits consisting of an additional five year in age credit (up to a maximum of sixty five) and an additional five years in service credits (up to a maximum of twenty five) for computation of the benefits in accordance with the Retire-

ment Plan,[5] and an option to continue either the company's contributory or non contributory health plan.[6] The Retirement Plan provided alternative methods of payment through a single life annuity or a social security leveling option, to be selected by the employee.[7] All of the Plaintiffs retired pursuant to ERP and began to receive their pension benefits through the social security leveling option on or about March 1992. On or about May 1993, PRMMI notified the Plaintiffs that their benefits would be reduced to correct a miscalculation in the computation of the social security leveling option.[8]

Buck Consultants, Inc. has served as consultant for PRMMI's Retirement Plan since 1976.[9] Buck has performed various services in-elation to the Plan which include: a) preparation of annual plan valuations; b) completion of schedules to be submitted to the Pension Benefit Guarantee Corporation and the IRS; c) calculation of pension expenses; d) drafting correspondence related to the plan; e) advising PRMMI regarding compliance with federal pension regulations.[10]

PRMMI requested Buck's services in relation to the ERP on July 1991.[11] Since then, Buck performed various services for PRMMI in connection to the ERP: a) Buck prepared estimates of the cost of establishing and maintaining the ERP, including cost estimates for eight different ERP designs; [12] b) Buck prepared the draft of the resolution that was adopted by PRMMI's Board to amend the Plan to provide for the ERP; [13] c) Buck prepared benefit plan information for each eligible employee to be included as attachments to the retirement package, including calculation of benefits under the regular

---

4. Resolution of the Board of Directors of PRMMI, 11/2/91, ¶ 4, DE 95, exh.2.

5. Part One Waiver, ¶ 2(a), DE 95, exh. 4; *see also* Tr. Depo. Iris Hernandez, DE 120, exh. 1, p. 135.

6. Part One Waiver, ¶ 2(a), DE 95, exh. 4.

7. Tr. Depo. Iris Hernandez., DE 120, exh. 1, p. 135.

8. Tr. Depo. Rodriguez, DE 123, exh. 1, p. 25; Answer to Plaintiff's Firs Set of Interrogatories, Question 14., D.E. 87, exh. 18, p. 000086.

9. Affidavit Joseph LoCiciero, DE 98, ¶ 2.

10. Affidavit Joseph LoCiciero, DE 98, ¶ 3.

11. Affidavit Joseph LoCiciero, DE 98, ¶ 2.

12. Invoice March 23, 1992, DE 87, exh.5, p. 1/000036; Affidavit Joseph LoCiciero, DE 98, ¶ 6.

13. Invoice March 23, 1992, DE 87, exh.5, p. 4/000039; Affidavit Joseph LoCiciero, DE 98, ¶ 6.

Retirement Plan and under the ERP;[14] d) Buck calculated the final retirement benefits under the social security leveling option and prepared allowance payment forms, data and calculations;[15] and e) Buck prepared reports required by government agencies.[16]

On or about March 1993, while calculating retirement estimates for other PRMMI employee, Buck discovered the miscalculation of the social security leveling optional.[17] Buck informed PRMMI of the miscalculation and instructed them to correct the overpayment.[18] PRMMI notified the affected employees by phone and through a letter drafted under the supervision of Buck.[19] Buck agreed to pay the Retirement Plan for the monies paid in excess due to their miscalculation.[20] The affected employees were not required to return the overpayments and were given the opportunity to choose once again their preferred method of payment, i.e. life annuity, or corrected leveling option.[21] Plaintiffs' benefits were reduced effective June 1, 1993.[22]

## DISCUSSION

### A. Buck's status under ADEA and OWBPA

■ Plaintiffs contend that Buck is responsible under ADEA and OWBPA as agent and co-employer for its participation the development of the early retirement plan that gave rise to this suit. Both the ADEA and OWBPA impose civil liability for discharge decisions by an "employer", who is defined as any "person engaged in commerce . . . [or] any agent of such a person." 29 U.S.C.A. § 630(b). Although the term "agent" is not defined anywhere in the law, the weight of authority suggests that the textual inclusion of the phrase "agent of such

a person," was merely intended to create respondeat superior liability against employers for the acts of their agents, not upon the agents individually. Neither the First Circuit nor the Supreme Court have ruled on this issue under ADEA, however, there is a cascade of cases in this District holding that there is no individual liability under ADEA and that only the employer is liable for the acts of its agents. *See Moreno v. John Crane, Inc.*, 963 F.Supp. 72 (D.P.R.1997) (Casellas, J.); *Bonano v. Banco Bilbao Vizcaya*, 952 F.Supp. 72 (D.P.R.1997) (Dominguez, J.); *Figueroa v. Mateco, Inc.*, 939 F.Supp. 106 (D.P.R.1996) (Perez–Gimenez, J.); *Hernandez v. Wangen*, 938 F.Supp. 1052 (D.P.R. 1996) (Laffitte, J.); *Anonymous v. Legal Services Corp.*, 932 F.Supp. 49 (D.P.R.1996) (Perez Gimenez, J.); and *Flamand v. American Inter. Group, Inc.*, 876 F.Supp. 356 (D.P.R.1994) (Laffitte, J.). Thus, even if Buck was an agent of PRMMI, Buck would not be liable under ADEA. Buck could only be liable under ADEA if it was actually an employer of the Plaintiffs and not merely an agent of the employer, PRMMI.

■ The First Circuit has established that a joint-employer relationship exists "where two or more employers exert significant control over the same employees and share or co-determine those matters governing essential terms and conditions of employment." *Rivera–Vega v. ConAgra, Inc.*, 70 F.3d 153, 163 (1st Cir.1995). Further, the First Circuit has acknowledged a host of factors used to determine the existence of joint employer status. *Id.* at 163; *see also Rivas v. Federacion de Asociaciones Pecuarias*, 929 F.2d 814 (1st Cir.1991) (analyzing joint employer status in the context of ADEA). Those fac-

---

**14.** Invoice March 23, 1992, DE 87, exh.5, p. 3/000038; Affidavit Joseph LoCiciero, DE 98, ¶ 6.

**15.** Invoice March 23, 1992, DE 87, exh.5, p. 4/000039.

**16.** Invoice March 23, 1992, DE 87, exh.5, pp. 1–3/000036–000038; Affidavit Joseph LoCiciero, DE 98, ¶ 6.

**17.** Answer to Plaintiff's Firs Set of Interrogatories, Question 11, DE 87, exh. 18, p. 7/000085; Supplemental Answer, p. 2/ 000092.

**18.** Answer to Plaintiff's Firs Set of Interrogatories, Question 14, DE 87, exh. 18, p. 8/000086.

**19.** *Id.*

**20.** *Id.*

**21.** *Id.*

**22.** Draft Letter of April 27, 1993, at DE 87, exh.16, p. 11–12/C00063–000064.

tors include: supervision of the employees' day-to-day activities; authority to hire, fire, or discipline employees; authority to promulgate work rules, conditions of employment, and work assignments; participation in the collective bargaining process; ultimate power over changes in employer compensation, benefits and overtime; and authority over the number of employees. *Rivera–Vega,* 70 F.3d at 163.[23]

In the present case, Buck did not have any of the qualities of an employer. Buck did not have authority to hire, fire, or discipline employees. Buck had no authority to promulgate work rules, conditions of employment or work assignments. Buck did not have any participation in the day to day supervision of the employees, nor did it participate in the collective bargaining process. Finally, and most important, Buck did not have ultimate power over changes in employer compensation, benefits and overtime.

■ Notwithstanding, Plaintiffs argue that Buck controlled an essential function or condition of employment because "together with PRMMI and PRMSA, [Buck] had the authority to determine the level of benefits that would be provided to the employees." However, the record is completely devoid of any evidence which could support Plaintiffs' assertion that Buck had any *authority* to determine the level of benefits. The level of benefits under the ERP hinged upon the eligibility criteria and the age and time credits awarded under the ERP. There is absolutely no evidence on the record that could reasonably be construed to show that Buck had the authority to establish the criteria nor the age

or time credits allowed under the ERP. The evidence, taken in the light most favorable to the Plaintiffs and drawing all reasonable inferences in their favor, simply shows that Buck provided technical assistance to PRMMI in relation to the regular Retirement Plan and in the implementation of the ERP. The evidence shows that Buck performed computations and actuarial studies for PRMMI relating to cost estimates; prepared reports required by government agencies; prepared drafts of the resolution adopted by PRMMI's Board to amend the Retirement Plan; and prepared benefit plan information and final retirement benefit payment forms, data and calculations to be included as attachments to the retirement package. This evidence can not reasonably be construed to hold that Buck had authority to determine the level of benefits that would be offered under the plan. Any such determination rested solely on the hands of PRMMI.

Further, the evidence in the record tends to show that Buck's relation to PRMMI is more akin to that of an independent consultant for actuarial services rather than a co-employer or agent of PRMMI for employment purposes. There is no evidence in the record to show that Buck had any control over PRMMI's employment practices nor that it had any employment nexus with the Plaintiffs.

### B. Buck's status under Law 100.

■ Law 100 prohibits discrimination by an "employer" based on the protected characteristic of, among other factors, age. P.R.

---

**23.** Plaintiffs cite additional caselaw for the proposition that a plan administrator may be an "employer". *See Cook v. Arrowsmith,* 69 F.3d 1235 (2d Cir.1995): *Spirt v. Teachers Ins. & Annuity Assoc.,* 691 F.2d 1054 (2d Cir.1982); and *Carparts Dist. Center v. Automotive Wholesaler's Assoc.,* 37 F.3d 12 (1st Cir.1994). These cases, however, do not shed additional light in relation to Buck's status. In particular, *Cook* addressed the liability of a parent corporation for the acts of its wholly owned subsidiary applying factors similar to the above. In *Spirt.* a case concerning the liability of a retirement annuity plan to whom the employer had completely delegated its responsibility to provide the benefits, the Second Circuit held that ADEA applies to the manager of the retirement annuity plan. Finally, *Carparts,* a case concerning health insurance under the ADA, the First Circuit held that where the employer delegates its responsibility to provide health insurance on a third party, said entity must be deemed an "employer" under ADA. The Court held that the entity would be deemed an employer if it exists solely for the purpose of delegating the responsibility to provide health insurance and only if it had the authority to determine the level of benefits. *Carparts,* 37 F.3d at 17. As discussed below, there is no evidence in the record to support either a finding that Buck had authority to determine the level of benefits under the Retirement Plan or that Buck existed solely for the purpose of delegating the responsibility to provide benefits to the employees.

Laws Ann. Tit. 29 § 146. The term "employer" is defined as "any natural or artificial person employing laborers, workers or employees, and the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or artificial person." P.R. Laws Ann. Tit. 29 § 151(2). As discussed above there is no evidence in the record to support Plaintiffs' contention that Buck had any control over PRMMI's employment practices nor that it had any employment nexus with the Plaintiffs. Therefore, Buck is not liable under law 100. *See Santini–Rivera v. Serv Air, Inc.,* 94 JTS 121, p. 182 (holding that "[t]he legislation in question is exclusively concerned with labor matters. Its subject is strictly the employer-employee relationship." (translation ours)).

## C. Buck's status under ERISA.

Plaintiffs contend that Buck is responsible as a fiduciary under ERISA for the unilateral reduction of Plaintiffs' benefits. For purposes of ERISA, "a person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or *discretionary control* respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). (Emphasis added.) Whether Buck Consultants, Inc. exercised any authority or control respecting management or disposition of the plan's assets, depends, therefore, upon whether either it exercised authority or control over the plan's trustees. *See Sommers Drug Stores v. Corrigan Enterprises, Inc.,* 793 F.2d 1456 (5th Cir.1986) (the requisite control exists only if the defendants, either through the use of their positions or otherwise, caused the plan trustees to relinquish their independent discretion to follow instead the course prescribed by them).

The evidence presently on the record tends to show that Buck has been a long-time consultant for PRMMI's retirement plan and that Plaintiffs benefits were reduced following Buck's instructions to correct the overpayments. Therefore, viewing the evidence in the light most favorable to the plaintiffs and drawing all reasonable inferences in their favor, it is possible that a reasonable jury could find that the trustees of PRMMI's Plan were controlled by Buck when they decide to reduce plaintiff's benefits. *Cortés–Irizarry,* 111 F.3d at 187

## D. Other claims.

Plaintiffs complaint includes claims for breach of contract and for violation of section 1983 of the Civil Rights Act. This claims fail against Buck for different reasons. The contract claim fails simply because there is no contractual relationship between Plaintiffs and Buck. The section 1983 claim fails because Buck is not a state actor. *See* 42 U.S.C. § 1983.

## CONCLUSION

Plaintiffs ADEA, and Law 100 claims against Buck must be dismissed. At this stage, the record is devoid of any evidence that could support Plaintiffs contention that Buck was an employer of the Plaintiffs for purpose of ADEA or Law 100. There is no evidence on the record that Buck had any control over PRMMI's employment practices nor that it had any employment nexus with the Plaintiffs. Likewise, Plaintiffs breach of contract claim and section 1983 claim against Buck must be dismissed as frivolous because there is no contractual relation with Buck, nor the requisite state action for a section 1983 claim. However, Plaintiffs ERISA claim survives. At the present summary judgment stage, viewing the evidence in the light most favorable to the plaintiffs and drawing all reasonable inferences in their favor, Plaintiffs have raised a material issue of fact as to whether Buck was a fiduciary under ERISA. The evidence on the record may lead a reasonable jury to find that the trustees of PRMMI's Plan were controlled by Buck at the time they decide to reduce plaintiff's benefits.

**WHEREFORE** defendant Buck's Motion to Dismiss is GRANTED IN PART, and

Plaintiff's Request for Partial Summary Judgment is DENIED.

IT IS SO ORDERED.