Adaline **TORRES–SANTIAGO,**
Plaintiff,

v.

Gabriel **ALCARAZ–EMMANUELLI,**
et al., Defendants.

Civil No. 06–1349 (FAB).

United States District Court,
D. Puerto Rico.

Jan. 15, 2008.

Ralph Jr. Vallone–Jr., Ralph Vallone, Jr. Law Office, San Juan, PR, for Plaintiff.

Jose J. Gueits–Ortiz, Department of Justice of Puerto Rico, Beatriz Annexy–Guevara, Reichard & Escalera, Claribel Ortiz–Rodriguez, Sanchez Betances Sifre Munoz Noya & Rivera Law Offices, PSC, San Juan, PR, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

On June 22, 2006, plaintiff Adaline Torres–Santiago ("Torres–Santiago") filed an amended complaint against Gabriel Alcaraz–Emmanuelli ("Alcaraz–Emmanuelli"), in his personal and official capacity as Secretary of Puerto Rico's Department of Transportation and Public Works ("DTOP," as the department is known locally), the conjugal partnership Alcaraz–Doe, Fernando Vargas–Arroyo ("Vargas–Arroyo"), in his personal and official capacity as Executive Director of the Puerto Rico Highway and Transportation Authority, the conjugal partnership Vargas–Roe, and Evan Gonzalez–Baker ("Gonzalez–Baker") in his official capacity as President and General Manager of the Metropolitan Bus Authority ("AMA," as the authority is known locally) (Docket No. 25). On August 7, 2006, defendants moved to dismiss the amended complaint for failure to state a claim pursuant to Rule 12(b)(6) (Docket No. 30). On August 28, 2006, plaintiff opposed the motion to dismiss (Docket No. 36). For the reasons discussed below, the Court **GRANTS in part and DENIES in part** defendants' motion to dismiss.

## FACTUAL BACKGROUND

Plaintiff Torres–Santiago worked as the President and General Manager of AMA from mid-January 2005 to February 5, 2006. Although she tendered her own resignation, she claims that she was constructively forced to resign by defendants, who discriminated against her based upon her age and gender, creating an intolerable environment in which to work. In addition to allegedly creating an atmosphere in which plaintiff's co-workers referred to her as "the old woman" or "the witch" (Docket No. 25, ¶ 34 ("la vieja" o "la bruja")), plaintiff cites a number of instances in which defendant Alcaraz–Emmanuelli directly addressed her in a discriminatory fashion.

The first such instance took place in late January 2005. At a meeting, Alcaraz–Emmanuelli told Torres–Santiago that she was very serious and that he wanted to make her laugh. Torres–Santiago responded that she was a serious person. Alcaraz–Emmanuelli then responded that "the most important factor to his understanding was youth" and he asked plaintiff "don't you feel old among so many young people?" (Docket No. 25, ¶ 23.)

Then at another meeting in early February 2005, Alcaraz–Emmanuelli asked Torres–Santiago what she would do now that "the breast she had to suck milk from had gone." (*Id.*, ¶ 25 ("que se le habia ido la teta que le daba de mamar").) Torres–Santiago then asked Alcaraz–Emmanuelli what he meant by his comment and he

allegedly responded "Fagundo [the former Secretary of Transportation] was not there anymore," and then asked plaintiff "how will you manage?" (*Id.*) In that same meeting Torres–Santiago asked to be considered for the position of Director of "Alternativa de Transporte Integrado," to which Alcaraz–Emmanuelli replied that he was considering a man for that position and that he had it all decided. (*Id.*)

On a third occasion in March 2005, Torres–Santiago met again with Alcaraz–Emmanuelli and unnamed others to discuss a report. In that meeting Alcaraz–Emmanuelli pointedly asked Torres–Santiago her age. (*Id.* at ¶ 26.) Thereafter, Alcaraz–Emmanuelli told Torres–Santiago that her position at AMA was "made for men and not for women" because transportation was a "man's business." (*Id.* at ¶ 27.)

On a fourth occasion, at an unnamed date and time, Torres–Santiago, Vargas–Arroyo and Alcaraz–Emmanuelli met to listen to what appears from the amended complaint to have been recorded voices, in order to choose the voice that would be used to announce stops on the AMA bus routes. (*Id.* at ¶ 29.) After hearing one voice, Alcaraz–Emmanuelli told Torres–Santiago "that voice sounds as old as you." (*Id.*)

On a fifth occasion, also at an unnamed date and time, Alcaraz–Emmanuelli told Torres–Santiago that he did not want a jacket that AMA was planning to give him because Torres–Santiago and Alcaraz–Emmanuelli could not fit in the jacket together. (*Id.* at ¶ 30.) Alcaraz–Emmanuelli then told Torres–Santiago "you are alone, nobody is going to be jealous." (*Id.*) Torres–Santiago purports to have acted "seriously" thereby prompting Alcaraz–Emmanuelli to say to her "that's the problem

when you work with women." (*Id.*) At the end of this meeting, Torres–Santiago told Alcaraz–Emmanuelli that they needed to travel to a site to make an inspection together and Alcaraz–Emmanuelli responded that he would not travel with "an old hen." (*Id.*)

Torres–Santiago also alleges that she was harassed on December 28, 2005 by Guillermo Mena ("Mena"), a press official. Mena allegedly called plaintiff on her cell phone, which she answered during her mother's prayer service. (*Id.* at ¶ 42.) During this call Mena told Torres–Santiago that he was with defendant Vargas–Arroyo and that they were calling plaintiff upon the instruction of Alcaraz–Emmanuelli. (*Id.*) Torres–Santiago avers that she found this call offensive and humiliating, although she does not allege that any gender or age related comments were made during the call. Torres–Santiago resigned on February 5, 2006 (*id.* at ¶ 43), allegedly because of the "intolerable" and "hostile" work environment she experienced as a result of the gender and age based harassment she endured from defendants.

## DISCUSSION

### A. MOTION TO DISMISS STANDARD

▮ To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Rodriguez–Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1967, 167 L.Ed.2d 929 (2007)). To avoid dismissal, the complaint must contain factual allegations that "raise a right to relief above the speculative level," or in other words, plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible."[1] *Twombly,* 127 S.Ct. at 1965, 1974.

---

**1.** Notably, the U.S. Supreme Court "disavowed the oft-quoted language of *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2

L.Ed.2d 80 (1957), that a 'complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plain-

■ The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the complaint's allegations. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.,* 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (citing *Correa–Martinez,* 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).

## B. ELEVENTH AMENDMENT IMMUNITY

Defendants argue that the Eleventh Amendment to the U.S. Constitution renders Alcaraz–Emmanuelli and Gonzalez–Baker immune to suit in their official capacity as officers of the DTOP and the AMA. Plaintiff disagrees.[2]

■ The Eleventh Amendment bars suits in federal court for money damages against states unless one of four exceptions apply.[3] *Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority,* 991 F.2d 935, 938 (1st Cir.1993). This protection from suit extends to the Commonwealth of Puerto Rico.[4] Immunity from suit also extends from the state itself to its instrumentalities, also known as "alter egos" of the state. *Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of Puerto Rico,* 818 F.2d 1034, 1036 (1st Cir.1987); *see Mount Healthy City School Dist. Bd. Of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Immunity even extends to state officials "when the state is the real, substantial party in interest," such as when a suit is brought against a state official in his official capacity. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 89–91, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Bernier–Aponte v. Izquierdo–Encarnacion,* 196 F.Supp.2d 93, 98–99 (D.P.R.2002).

tiff can prove no set of facts in relief of his claim which would entitle him to relief.' " *Margo Caribe, Inc.,* 490 F.3d at 95–96 (citing *Twombly,* 127 S.Ct. at 1969).

2. Most of the plaintiff's opposition to defendants' Eleventh Amendment immunity argument was made up of citations to cases discussing qualified immunity rather than Eleventh Amendment immunity. (Docket No. 36, p. 11–15.) These citations are inapposite for the purpose of evaluating defendants' Eleventh Amendment defense.

3. The four exceptions to Eleventh Amendment immunity are (1) where a state consents to suit in a federal forum, (2) where a state waives its own immunity by statute or the like, (3) where Congress abrogates state immunity (so long as Congress speaks clearly and acts in furtherance of particular powers), or (4) under certain circumstances other constitutional imperatives may take precedence over the Eleventh Amendment's federal-court bar. *Metcalf,* 991 F.2d at 938.

4. In an unbroken string of cases, the First Circuit Court of Appeals has consistently held that Puerto Rico is considered a State for the purposes of the Eleventh Amendment. *See, e.g., Negron Gaztambide v. Hernandez Torres,* 145 F.3d 410 (1st Cir.1998); *Metcalf & Eddy,* 991 F.2d 935, 939 n. 3 (1st Cir.1993); *Litton Indus., Inc. v. Colon,* 587 F.2d 70 (1st Cir. 1978).

### i. ARM OF THE STATE ANALYSIS

■ For Alcaraz–Emmanuelli and Gonzalez–Baker to be immune from suit under the Eleventh Amendment, the Court must first find that the DTOP and the AMA qualify as arms of the state. The First Circuit utilizes a two-part test to determine if an entity is an arm of the state. *Pastrana–Torres v. Corporacion De Puerto Rico Para La Difusion Publica,* 460 F.3d 124, 126 (1st Cir.2006); *Fresenius Med. Care Cardiovascular Res., Inc. v. Puerto Rico & the Caribbean Cardiovascular Ctr. Corp.,* 322 F.3d 56, 68 (1st Cir. 2003). The first step is to analyze whether the state structured the entity in a way to allow the entity to share the state's Eleventh Amendment immunity. *Pastrana–Torres,* 460 F.3d at 126; *Fresenius,* 322 F.3d at 68. If the relevant structural factors do not conclusively show that the entity is protected by the Eleventh Amendment, then the Court focuses upon step two of the test, which involves a weighing of the risk that damages will be paid from the state treasury if the entity is found liable. *Pastrana–Torres,* 460 F.3d at 126. This second step focuses upon whether the state is "legally or practically" obligated itself to pay the entity's debts. *Id.* at 126; *Fresenius,* 322 F.3d at 68. If so, the entity is entitled to Eleventh Amendment immunity. *Pastrana–Torres,* 460 F.3d at 126; *Fresenius,* 322 F.3d at 68.

### ii. DTOP

■ This Court concurs with pre-existing precedent from this district holding that the DTOP is an arm of the state. *See Bernier–Aponte v. Izquierdo–Encarnacion,* 196 F.Supp.2d 93, 101 (D.P.R.2002). The Court shall, nonetheless, briefly review the findings of the *Bernier–Aponte* Court within the framework laid out in *Fresenius,* because *Bernier–Aponte* was decided under the older *Metcalf* standard.

The Court must determine under step one of the *Fresenius* test whether under Federal law the DTOP is structured in such a way that it shares the sovereignty of the Commonwealth of Puerto Rico. *Pastrana–Torres,* 460 F.3d at 126. Another way of phrasing the first inquiry is whether DTOP is autonomous from the Commonwealth of Puerto Rico. *Id.* at 126–27. This Court finds that the following factors clearly indicate that the DTOP does *not* operate with a significant degree of autonomy from the Commonwealth: (1) the DTOP is not separately incorporated from the Commonwealth, *Bernier–Aponte,* 196 F.Supp.2d at 100; (2) the Governor appoints the Secretary of the DTOP, *id.;* (3) the Commonwealth provides the budget for the DTOP, *id.;* (4) the DTOP's enabling statute only allows the Secretary to draft and sign agreements on behalf of the Commonwealth (and not in the name of the DTOP), *id.* at 101; P.R. Laws Ann. tit. 3, § 412(2); (5) the DTOP property is not subject to taxation by the Commonwealth, *Bernier–Aponte,* 196 F.Supp.2d at 101; and (6) the Commonwealth (again, not the DTOP) is responsible for injuries attributable to a defect in a highway under the DTOP's control. P.R. Laws Ann. tit. 3, § 422. In sum, the Court finds that the DTOP's structure allows it to share the Commonwealth's sovereignty, making it unnecessary to undertake step two of the *Fresenius* analysis.

Even if the Court were to assume *arguendo* that the various factors touching upon the structure of the DTOP "point in different directions," thus necessitating analysis under step two of the *Fresenius* test, it would still find that the DTOP is an arm of the state. Under the second step, "the dispositive question concerns the risk that the damages will be paid from the public treasury." *Fresenius,* 322 F.3d at 68. The DTOP does not have a juridical persona separate from that of the Com-

monwealth. *Bernier–Aponte*, 196 F.Supp.2d at 101. An award against the DTOP would be paid from the Commonwealth treasury. *Id.* Therefore, under the second step of the *Fresenius* test, the DTOP is an arm of the state, and may partake of the Commonwealth's Eleventh Amendment immunity.

As an arm of the state, the DTOP, the true party in interest in a suit for money damages against a DTOP officer in his or her official capacity, is immune so long as none of the four exceptions to Eleventh Amendment immunity apply. *See Metcalf & Eddy*, 991 F.2d at 939. Plaintiff raised only one such exception (Docket No. 36, p. 13): Congress abrogated Eleventh Amendment immunity in regards to claims brought under Title VII of the Civil Rights Act. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 451–54, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Therefore, Eleventh Amendment immunity is not available in regards to plaintiff's Title VII claim against Alcaraz–Emmanuelli in his official capacity, but it is available with respect to plaintiff's other claims against Alcaraz–Emmanuelli in his official capacity. Accordingly, plaintiff's claims against Alcaraz–Emmanuelli in his official capacity under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the ADEA are **dismissed with prejudice.**[5]

### iii. AMA

Defendants also argue that defendant Gonzalez–Baker, as the General Manager of AMA, is immune from suit under the Eleventh Amendment for the claims against him in his official capacity. The Court disagrees. Instead, the Court agrees with recent precedent from this district that the AMA is not an arm of the state. *Orria–Medina v. Metropolitan Bus*

*Authority*, Civ. No. 06–1643(JAG), pp. 14–27 (D.P.R. Sept. 6, 2007).

The *Orria–Medina* Court conducted the two-prong *Fresenius* analysis to determine if the AMA is an arm of the state. Under the first prong of the test, the *Orria–Medina* Court began by reviewing the AMA's enabling act. The enabling act states that the AMA is an entity which operates as "a private enterprise or business," and it also grants AMA the power to sue and be sued, to raise its own revenue by charging fees for its services, and to borrow money and issue bonds, all factors tending to show that AMA was independent from the State. P.R. Laws Ann. tit. 23, § 602, 606; *Orria–Medina*, Civ. No. 06–1643(JAG) at 18. On the other hand, the enabling act exempts AMA from taxation on its revenues and property, a factor tending to show that AMA shares the Commonwealth's Eleventh Amendment immunity. P.R. Laws Ann. tit. 23, § 619; *Orria–Medina*, Civ. No. 06–1643(JAG) at 18. As a second step, the *Orria–Medina* Court again looked to the enabling act to ascertain whether the Commonwealth claimed responsibility for AMA's debts and found that it did not, noting that the enabling act states that the Commonwealth is not liable for AMA's debts, and specifically noting that the Commonwealth will not assume as debt the bonds issued by AMA. P.R. Laws Ann. tit. 23, § 603, 616; *Orria–Medina*, Civ. No. 06–1643(JAG) at 18–19. After noting that the AMA did not provide any evidence of how Commonwealth courts treated the AMA, the *Orria–Medina* Court considered whether the AMA's functions are governmental in nature. *Orria–Medina*, Civ. No. 06–1643(JAG) at 19.

---

**5.** As defendants note, the Supreme Court ruled that Congress did not validly abrogate the states' Eleventh Amendment immunity in regards to ADEA claims. *Kimel v. Florida Bd. Of Regents*, 528 U.S. 62, 91, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).

The *Orria–Medina* Court found that the AMA was created to further a local interest, and therefore it was performing a proprietary rather than a governmental function. *Orria–Medina*, Civ. No. 06–1643(JAG) at 19–20 (citing P.R. Laws Ann. tit. 23, § 606 and *Morrison–Knudsen Co., Inc. v. Mass. Bay Transp. Auth.*, 573 F.Supp. 698, 704 (D.Idaho 1983)). As the last factor considered in the first prong of the *Fresenius* analysis, the *Orria–Medina* Court considered the extent to which the Commonwealth exerted control over the AMA. The Court found that the AMA's finances are subject to the supervision of the Governor and the Legislature and that the AMA's operations are supervised by the DTOP. *Orria–Medina*, Civ. No. 06–1643(JAG) at 20. On the whole, the Court found that the factors considered under the first prong of the *Fresenius* test weighed in favor of finding that the AMA was not structured to share the Commonwealth's sovereignty, nonetheless, "[t]o be sure," the *Orria–Medina* Court went on to consider prong two of the *Fresenius* test and evaluated the risk that the damages allegedly suffered by the plaintiff would be paid from the Commonwealth's treasury. *Id.* at 21.

Under the second prong of the *Fresenius* test, the *Orria–Medina* Court reviewed both "what is said by state law" and "what in fact has happened." *Id.* at 22 (citing *Fresenius*, 322 F.3d at 72). As noted above, the AMA's enabling act specifies that debts and obligations of the AMA are not those of the Commonwealth. P.R. Laws Ann. tit. 23, § 603, 616. The AMA alleged, however, that despite the statutory wording clearly stating that the Commonwealth was not liable for the AMA's debts, the Commonwealth had funded the AMA for the last ten years with "substantial amounts from the public treasury." *Orria–Medina*, Civ. No. 06–1643(JAG) at 22. In analyzing the AMA's assertions in this regard, the *Orria–Medina* Court noted that the Commonwealth provided roughly 25% of the AMA's budget for the fiscal year 2005–2006, an amount that the Court found to be "not particularly substantial." *Id.* at 22–23, 27. The *Orria–Medina* Court also gave importance to the fact that the Commonwealth's outlays to the AMA were completely "voluntary," and that there was no statutory obligation upon the Commonwealth Legislature to receive petitions from the AMA regarding funding as in *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 381 (9th Cir.1993). *Orria–Medina*, Civ. No. 06–1643(JAG) at 26–27. Therefore, the *Orria–Medina* Court concluded that the Commonwealth was neither legally nor practically bound to pay the AMA's debts, thus failing the second prong of the *Fresenius* test. *Id.* at 27.

Having failed the second prong of the *Fresenius* test, AMA does not qualify as an arm of the state. Because AMA is not an arm of the state, we hold that it is not entitled to share in the Commonwealth's Eleventh Amendment immunity, nor is defendant Gonzalez–Baker.

## C. PERSONAL LIABILITY UNDER TITLE VII

 Defendants argue that the claims against Alcaraz–Emmanuelli and Vargas–Arroyo in their personal capacity should be dismissed because Title VII does not provide for personal liability. Although the First Circuit Court of Appeals has not decided this question, *Valentin–Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 101 n. 18 (1st Cir.2006), many other circuit courts have agreed with defendants that individuals cannot be personally liable under Title VII. *See, e.g., Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 181 (4th Cir.1998); *Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 493 (7th Cir.1998); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317

(2d Cir.1995), *abrogated on other grounds by Burlington v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). There are also numerous decisions from this district holding that there is no personal liability under Title VII.[6] *See, e.g., Hernandez–Miranda v. Empresas Diaz–Masso, et al.*, Civil No. 06–2018(FAB), pp. 2–3, 2007 WL 5176991, at *1, 553 F.Supp.2d 73, 73–74 (D.P.R. Dec. 27, 2007); *Maldonado–Cordero v. AT & T*, 73 F.Supp.2d 177, 184 (D.P.R.1999); *Canabal v. Aramark Corp.*, 48 F.Supp.2d 94, 96–97 (D.P.R.1999); *Hernandez v. Wangen*, 938 F.Supp. 1052, 1063–64 (D.P.R.1996). This Court agrees with the strong existing precedent from this District that there is no personal liability for a supervisor under Title VII. Accordingly, the Title VII claims against Alcaraz–Emmanuelli and Vargas–Arroyo in their personal capacity are **dismissed with prejudice.**

## D. THERE IS NO PERSONAL LIABILITY UNDER THE ADEA

■ As with the Title VII claims, defendants argue that the ADEA does not provide for the personal liability of agents or supervisors of an employer. Although neither the Supreme Court nor the First Circuit Court of Appeals have addressed this issue, *see, e.g., Serapion v. Martinez*, 119 F.3d 982, 992 (1st Cir.1997), there are numerous cases from this district holding that there is no personal liability for agents or supervisors of an employer under the ADEA. *See, e.g., Rodriguez v. Puerto Rico Marine Management, Inc.*, 975 F.Supp. 115, 120 (D.P.R.1997); *Flamand v. American Intern. Group, Inc.*, 876 F.Supp. 356, 363–64 (D.P.R.1994).

Consistent with prior decisions from this district, this Court holds that there is no personal liability under the ADEA. Accordingly, the ADEA claims against Alcaraz–Emmanuelli and Vargas–Arroyo in their personal capacity are **dismissed with prejudice.**

## E. 42 U.S.C. § 1983

■ Defendants argue that Torres–Santiago fails to state a claim upon which relief can be granted pursuant to 42 U.S.C. § 1983. "Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right." *Omni Behavioral Health v. Miller*, 285 F.3d 646, 650–51 (8th Cir.2002); *see also Cruz–Erazo v. Rivera–Montanez*, 212 F.3d 617, 621 (1st Cir.2000). It is well settled that in order for a claim to be cognizable under section 1983, a plaintiff must plead and prove three elements: (1) that the defendants acted under color of state law; (2) that plaintiffs were deprived of federally protected rights, privileges, or immunities; and (3) that the defendants' alleged conduct was causally connected to the plaintiff's deprivation. *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 558 (1st Cir.1989). Hence, to succeed in a section 1983 action, plaintiffs must prove that defendants actions were a cause in fact or a proximate cause of their injury. *See Collins v. City Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

■ Torres–Santiago has failed to state a claim under section 1983 in regards to defendants Vargas–Arroyo and Gonzalez–Baker. Plaintiff's claim of constructive

---

**6.** Plaintiff cited to only one case, *Santiago v. Lloyd*, 33 F.Supp.2d 99 (D.P.R.1998), in which a court in this district allowed that a supervisor might be personally liable under Title VII. The Santiago Court in turn viewed the supervisor-defendant as an "alter ego" of the employer because the supervisor was allegedly a 50% stockholder of the employer, and was also alleged to be the President of the employer. *Id.* at 103–04. An alter ego theory is inapplicable to the facts of this case because the employer was a government agency and the defendants have no ownership interest in the agency.

discharge rests upon her allegations involving repeated instances of derogatory gender-and age-related comments directed towards her by co-workers, and specifically by defendant Alcaraz–Emmanuelli. Torres–Santiago claims that these comments made her working conditions so intolerable that she felt compelled to resign. (Docket No. 25, p. 18.) Assuming for the moment that Torres–Santiago successfully stated a claim under the first two elements of a section 1983 claim, she did not allege any facts indicating that defendants Vargas–Arroyo and Gonzalez–Baker discriminated against her based upon her gender or her age, nor that actions by either one of them caused her constructive discharge.

Torres–Santiago only made two factual allegations involving defendant Vargas–Arroyo. She first alleges that Vargas–Arroyo was present at a meeting including Torres–Santiago and Alcaraz–Emmanuelli when Alcaraz–Emmanuelli allegedly said "that voice sounds as old as you." (Docket No. 25, p. 10.) In the second instance, plaintiff alleges that Mena pestered her with a phone call when she was at her mother's funeral service. (Docket No. 25, p. 13.) Plaintiff does not allege that Mena made any negative remarks towards her regarding her age or her gender, but she notes that he said he was with Vargas–Arroyo when he called. (*Id.*) Neither of these two allegations show that Vargas–Arroyo took any gender or age based discriminatory actions against Torres–Santiago. Therefore, the section 1983 claim against Vargas–Arroyo in his official capacity is **dismissed with prejudice.**

Torres–Santiago made only one factual allegation about Gonzalez–Baker; she alleged that Gonzalez–Baker did not pay her for accumulated vacation and sick leave. Torres–Santiago did not allege that Gonzalez–Baker made any discriminatory comments towards her or that he took other actions which proximately led to her constructive dismissal. Accordingly, Torres–Santiago has failed to state a claim against Gonzalez–Baker under section 1983. Therefore, the section 1983 claim against Gonzalez–Baker in his official capacity is **dismissed with prejudice.**

▮ Lastly, Torres–Santiago has sufficiently pleaded a cause of action (at this point of the proceedings) under section 1983 for a violation of her constitutional right to equal protection against Alcaraz–Emmanuelli by alleging three incidents in which Alcaraz–Emmanuelli made sexually discriminatory or inappropriate remarks to her. (Docket No. 25, ¶¶ 25, 27, 30.) Therefore, defendant Alcaraz–Emmanuelli's request to dismiss Torres–Santiago's section 1983 claim against him in his personal capacity is **denied.**

## F. 42 U.S.C. § 1981

▮ Defendants correctly note that "[s]ection 1981 [7] proscribes intentional discrimination based on race." *Alexis v. McDonald's Restaurants of Massachusetts,* 67 F.3d 341, 346 (1st Cir.1995); *Vizcarrondo v. Bd. Of Trustees Of The Univ. Of Puerto Rico,* 139 F.Supp.2d 198, 207–08 (D.P.R.2001). It does not proscribe age or gender based discrimination. Torres–Santiago failed to plead any facts supporting the claim that any of the defendants intentionally discriminated against her on the basis of race. Therefore Torres–Santia-

---

7. Section 1981(a) provides:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full end equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

go's claims against all defendants pursuant to 42 U.S.C. § 1981 are **dismissed with prejudice.**

### G. LAW 100 CLAIM

Defendants argue that plaintiff's Law 100 claims cannot be brought against the defendants in their official capacity by the terms of Law 100 itself. Defendants also argue that Law 100 does not apply to defendants in their personal capacity because they are not an "employer" as defined in Law 100. The Court agrees with defendants' first argument because it applies to Alcaraz–Emmanuelli in his official capacity, but it disagrees with their second argument.

■ Law 100 seeks to prevent discrimination in the workplace by reason of age, race, color, religion, sex, social or national origin, social condition, political affiliation or political or religious ideas. *See* P.R. Laws Ann. tit. 29 § 146. Its definition of employer specifically excludes government agencies from coverage unless they "operat[e] as private business or enterprises." P.R. Laws Ann. tit. 29 § 151(2). Because the DTOP is considered an arm of the state, *see supra* section B.ii., any claims against it or defendant Alcaraz–Emmanuelli in his official capacity must be **dismissed.**[8]

■ Law 100 does not, however, exclude the defendants in their individual capacity. The Supreme Court of Puerto Rico has expressly considered the question of supervisor liability under Law 100. Specifically, in *Rosario Toledo v. Distribuidora Kikuet*, 151 D.P.R. 634 (2000), the Puerto Rico Supreme Court held that, contrary to the majority interpretation of Title VII, Puerto Rico's law against discrimination in the workplace, Law 100, does provide for the imposition of supervisor liability on the president of a corporation when he is the supervisor of the plaintiff, and is personally responsible for causing the plaintiff's injury. The Court later extended its decision to include, not only the actual employer or the owner and the president of the corporation, but also any other person responsible for the illegal conduct, without distinction. *See Rosario Toledo v. Distribuidora Kikuet, Inc.,* 153 D.P.R. 125, 2001 WL 7578 (2001); *see also Pacheco Bonilla v. Tooling & Stamping, Inc.,* 281 F.Supp.2d 336 (D.P.R.2003). This ruling was not limited to supervisors working for covered entities. It applies to any supervisor responsible for an act of discrimination. Moreover, in recent opinions, this Court has already found that government defendants can be liable under Law 100 in their individual capacity. *See Vega–Marrero v. Consorcio Dorado–Manati,* Civil No. 05–2354(FAB), pp. 25–28, 2007 WL 5173968, at *10–12, 552 F.Supp.2d 157, 169–72 (D.P.R. February 2, 2007); *Rodriguez–Narvaez v. Pereira, et al.,* Civil No. 04–1939(FAB), pp. 6–7, 2007 WL 5159630, at *2–3, 552 F.Supp.2d 211, 216–18 (D.P.R. Sept. 12, 2007).

Therefore, the Court shall **not dismiss** Torres–Santiago's Law 100 claims against defendants in their personal capacity.

### H. ARTICLE 1802 OF THE PUERTO RICO CIVIL CODE

Defendants argue that the article 1802 claims against them should be dismissed because they are immune from suit under the Eleventh Amendment to the U.S. Constitution. Plaintiffs, however, only bring their article 1802 claims against defendants in their individual capacity (Docket No. 25, ¶ 70), and therefore the Eleventh

---

8. As discussed above in section B.iii., *supra,* the AMA *is not an arm of the state and thus it* is not exempt from suit under Law 100, nor is defendant Gonzalez–Baker in his official capacity.

Amendment cannot provide defendants with immunity. Accordingly, the article 1802 claims are **not dismissed.**

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** defendants' motion to dismiss. Plaintiff's **Title VII** claims against Alcaraz–Emmanuelli and Vargas–Arroyo in their personal capacity are **dismissed with prejudice.** Plaintiff's **section 1981** claims against all defendants are **dismissed with prejudice.** Plaintiff's **section 1983** claims against Alcaraz–Emmanuelli, Vargas–Arroyo, and Gonzalez–Baker in their official capacity and against Vargas–Arroyo in his individual capacity are **dismissed with prejudice.** Plaintiff's **ADEA** claims against Alcaraz–Emmanuelli and Vargas–Arroyo in their personal capacity and against Alcaraz–Emmanuelli in his official capacity are **dismissed with prejudice.** Plaintiff's **Law 100** claims against Alcaraz–Emmanuelli in his official capacity is **dismissed with prejudice.** Partial Judgment shall enter accordingly.

IT IS SO ORDERED.